Lewis L. HAND and Sandra
HAND, Appellants,

v.

Robert TAVERA, M.D. and Humana
Hospital—Village Oaks,
Appellees.

No. 04–92–00618–CV.

Court of Appeals of Texas,
San Antonio.

Sept. 22, 1993.

Rehearing Denied Nov. 10, 1993.

Randall C. Jackson, Jr., Speiser, Krause, Madole & Mendelsohn, San Antonio, for appellants.

David V. Jones, Carol A. Jenson, Jones, Kurth & Treat, P.C., San Antonio, for appellees.

Before PEEPLES, BIERY and GARCIA, JJ.

## OPINION

PEEPLES, Justice.

In this medical malpractice case, plaintiff Lewis Hand appeals from a take-nothing summary judgment rendered on the sole ground that defendant Dr. Robert Tavera owed him no duty because the two never had a physician-patient relationship. We conclude that Tavera did not refute the existence of a physician-patient relationship as a matter of law, and therefore we reverse and remand for further proceedings.

We review the summary judgment evidence favorably to the nonmovant Hand under the familiar standards summarized in *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548 (Tex.1985). Hand went to the Humana Hospital (Village Oaks) emergency room complaining of a three-day head-

ache. The emergency-room physician (Dr. Boyle) was told that Hand had a personal history of high blood pressure and that his father had died of an aneurism. Boyle observed that Hand's symptoms rose and fell with his blood pressure, which Boyle was able to reduce periodically with medication. After two or three hours of observation, Boyle decided that Hand should be admitted to the hospital, a decision that required approval from another doctor. Hand had presented a Humana Health Care Plan card, and the front desk told Boyle that defendant Tavera was the doctor responsible that evening for authorizing such admissions.[1] Boyle briefed Tavera by telephone and recommended hospitalization, but ultimately Tavera disagreed with Boyle and concluded that Hand could be treated as an outpatient. Boyle said Tavera told him that Hand's problems "should be controlled by outpatient medication and follow-up in the office" and he also "recommended something for pain." Hand was sent home, where he suffered a stroke a few hours later. He and his wife brought this lawsuit against the hospital, Tavera, and Boyle. Eventually Hand nonsuited Boyle and settled with the hospital.

Tavera moved for summary judgment on the sole ground that he and Hand never established a physician-patient relationship and therefore he owed Hand no duty. Thus this appeal does not present the question whether Tavera's conduct constituted negligence that proximately caused Hand's damages.

█ Hand argues first that as a member in the Humana Health Care Plan, Tavera owed him a duty of care. There is summary judgment evidence that Hand had Humana Health Care Plan coverage and that Tavera was designated as the doctor acting for the Humana plan that night. The following clauses in the contract between Humana and Southwest Medical Group (which employed Tavera) obligated its doctors to treat Humana enrollees as they would treat their other patients:

PHYSICIAN agrees to provide or arrange for covered health care services for ENROLLEES in accordance with Attachment B. [Attachment B specifies various physician responsibilities, including "emergency care of a covered ENROLLEE who has been assigned to PHYSICIAN."]

. . . .

PHYSICIAN agrees to provide ENROLLEES with medical services which are within the normal scope of PHYSICIAN's medical practice. These services shall be made available to ENROLLEES without discrimination and in the same manner as provided to PHYSICIAN's other patients. PHYSICIAN agrees to provide medical services to ENROLLEES in accordance with the prevailing practices and standards of the profession and community.

Thus the contracts in the record show that the Humana plan brought Hand and Tavera together just as surely as though they had met directly and entered the physician-patient relationship. Hand paid premiums to Humana to purchase medical care in advance of need; Humana met its obligation to Hand and its other enrollees by employing Tavera's group to treat them; and Tavera's medical group agreed to treat Humana enrollees in exchange for the fees received from Humana. In effect, Hand had paid in advance for the services of the Humana plan doctor on duty that night, who happened to be Tavera, and the physician-patient relationship existed. We hold that when the health-care plan's insured shows up at a participating hospital emergency room, and the plan's doctor on call is consulted about treatment or admission, there is a physician-patient relationship between the doctor and the insured.

Tavera argues that Hand did not plead the Humana–Tavera contract as a basis for the physician-patient relationship. While Hand's pleading of this ground of recovery is indeed sketchy, we consider it adequate to put Tavera on notice that Hand was asserting it. See *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982).

---

1. We will refer to the Humana Health Care Plan as Humana or the Humana plan, and will refer to Humana Hospital as the hospital.

Tavera also argues that Hand is a third party who cannot assert rights under the Tavera–Humana contract, which expressly provides that it creates no third-party beneficiaries. But Hand does not assert rights under the Humana–Tavera contract in isolation or seek to recover for breach of contract; instead he contends that the entire health-care plan arrangement establishes that Tavera had a physician-patient relationship with him and therefore owed him a duty of care. He argues in essence that when the Hand–Humana contract is read together with the Humana–Tavera contract, he has a right to care from the doctor on call when his medical condition falls within his coverage with Humana. We agree and hold that when a patient who has enrolled in a prepaid medical plan goes to a hospital emergency room and the plan's designated doctor is consulted, the physician-patient relationship exists and the doctor owes the patient a duty of care.

■ Because this cause must be remanded for further proceedings, we address additional issues that will undoubtedly arise on remand. Certain decisions at trial, such as the contents of the court's charge and the admission of evidence, may depend upon whether Tavera owed Hand a duty under the federal and state anti-patient dumping statutes in addition to the duty created by the health care plan. Hand's negligence case based on the health-care plan will require proof of negligence. If either of his negligence per se theories is viable, he would not need to establish negligence but only that the statute was violated and that the violation proximately caused his injuries. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 312–13 (Tex.1987); *Missouri Pac. R.R. Co. v. American Statesman,* 552 S.W.2d 99, 103 (Tex.1977).

Hand does not argue that the anti-dumping statutes create a statutory cause of action for failure to treat a patient. Instead he argues that Tavera's failure to admit him to the hospital was negligence per se. In a related vein, he argues that the statutes create a duty to treat, which Tavera breached on the night in question.

The federal statute sets certain requirements for treatment of emergency patients, which need not be detailed here. There is no private civil action for damages against individual doctors who violate the federal statute. *See, e.g., Urban v. King,* 783 F.Supp. 560, 562–63 (D.Kan.1992); *Richardson v. Southwest Mississippi Regional Med. Center,* 794 F.Supp. 198, 200–202 (S.D.Miss.1992).

We agree with these holdings. The statute specifies different civil remedies for violations by doctors and violations by hospitals. It provides only a *civil fine* against offending *physicians:*

> (B) Subject to subparagraph (C), any *physician* who is responsible for the examination, treatment, or transfer of an individual in a participating hospital, including a physician on-call for the care of such an individual, and who negligently violates a requirement of this section ... *is subject to a civil money penalty* of not more than $50,000 for each such violation and, if the violation is gross and flagrant or is repeated, to exclusion from participation in this subchapter and State health care programs.

42 U.S.C. § 1395dd(d)(1)(B) (emphasis added). In contrast, the act provides for *civil damage suits* against offending *hospitals:*

> Any individual who suffers personal harm as a direct result of a participating *hospital's* violation of a requirement of this section may, in a civil action against the participating *hospital,* obtain those *damages available for personal injury* under the law of the State in which the hospital is located. . . .

*Id.* § 1395dd(d)(2)(A) (emphasis added).

■ In light of these provisions, a negligence per se action for damages against a physician is not viable. The express mention of one thing in a statute implies the exclusion of others. *See MacMillan v. Redman Homes, Inc.,* 818 S.W.2d 87, 92–93 n. 3 (Tex. App.—San Antonio 1991, writ denied). In particular, a statute that expressly authorizes a damage suit against the hospital and a civil fine against the physician, excludes a damage suit against the physician. It is highly unlikely that the legislature would have made these careful distinctions—that doctors may be fined and hospitals may be held liable for damages—and nevertheless intended to allow

damage suits against doctors individually. We therefore hold that the federal statute excludes civil damage suits against doctors, and that doctors who violate it are not subject to damage suits for negligence per se. Nor does the federal statute create a physician-patient relationship and a corresponding duty of care. Under the federal statute doctors may be fined, and hospitals may be liable for damages; but doctors who violate the statute are not liable for damages.

■ The Texas statute does not avail Hand, though for different reasons. Hand suggests that the Texas statute creates a general duty to treat patients in the emergency room. We do not read the statute that expansively. It simply forbids hospitals and their agents to deny admission for specified reasons listed in the statute. Section 311.022 of the statute forbids the rejection of emergency patients for reasons of indigence, race, religion, or national ancestry, and forbids certain kinds of discrimination not at issue here:

> (a) An officer, employee, or medical staff member of a general hospital may not deny emergency services *because a person cannot establish the person's ability to pay for the services or because of the person's race, religion, or national ancestry* if:
>
>> (1) the services are available at the hospital; and
>>
>> (2) the person is diagnosed by a licensed physician as requiring those services.
>
> (b) An officer or employee of a general hospital may not deny a person in need of emergency services access to diagnosis by a licensed physician on the hospital staff *because the person cannot establish the person's ability to pay for the services or because of the person's race, religion, or national ancestry.*
>
> (c) In addition, the person needing emergency services may not be subjected to arbitrary, capricious, or unreasonable discrimination based on age, sex, physical condition, or economic status.

TEX. HEALTH & SAFETY CODE ANN. § 311.022 (Vernon 1992) (emphasis added).

The record shows that Hand was not denied admission because of indigence, race, national ancestry, or religion; and Hand does not suggest that Tavera discriminated against him on any other forbidden basis listed in section (c). On the contrary, the record shows as a matter of law that Tavera declined to admit Hand to the hospital because he thought Hand could be treated as an outpatient. Clearly Hand was not turned away for inability to pay; after all, Tavera knew that he was a health plan subscriber who had prepaid for covered services.

For the reasons stated, neither the federal nor the state statute provides a basis for a negligence per se suit against Tavera or otherwise created the physician-patient relationship or required him to treat Hand.

We reverse the summary judgment and remand this cause for further proceedings on Hand's negligence action based on the physician-patient relationship created by the Humana Health Care Plan.