Prodyot K. DAY and Krishna
Day, Appellants,

v.

HARKINS & MUNOZ and Michael G.
Harkins, Individually, Appellees.

No. 01–96–00434–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 5, 1997.

Rehearing Overruled July 23, 1997.

Terrence A. Gaiser, Houston, Appellants.

Michael Garet Harkins, Sally T. Miller, Dion D. Ramos, Houston, for Appellees.

Before SAM BASS, O'CONNOR and HEDGES, JJ.

## OPINION

SAM BASS, Justice.[*]

This is an appeal from a summary judgment granted in favor of the law firm in a legal malpractice case. The legal malpractice lawsuit arose out of an underlying wrongful death and medical malpractice case. In two points of error, the plaintiffs argue the trial court erred in granting summary judgment because the lawyer-defendants did not refute the existence of a duty in the underlying medical malpractice case. We affirm.

### FACTS & PROCEDURAL HISTORY

Before this case, the Days employed Michael Harkins of the law firm Harkins & Munoz (collectively Harkins & Munoz) to represent them in a wrongful death and medical malpractice claim against two doctors and the Summit Arena.[1] The facts giving rise to that lawsuit are pertinent to this case, and therefore, are as follows:

The Summit contracted with two physicians, Valentino Imperial, M.D. and Victorino Cumagun, M.D., to provide emergency first-aid care to Summit patrons. The underlying suit arose while the two physicians were on-call at the Summit for a rock concert. After the concert had ended and while the patrons were clearing the premises, Pradipta Day, the Days' son, suffered from an asthma attack and died. Because the concert had ended and the two physicians had already left the Summit premises, they did not provide treatment for Pradipta.

Harkins & Munoz filed a wrongful death and medical malpractice suit against the physicians and the Summit on the Days' behalf, alleging that the physicians had a duty to treat Pradipta's asthma attack. Both physicians moved for summary judgment and argued they did not have a duty to treat Pradipta because they did not have a doctor-patient relationship with him. The trial court agreed the doctors had no duty to treat Pradipta and granted the physicians' motions for summary judgment. The Days settled their claim against the Summit during trial.[2]

Still represented by the same counsel, the Days appealed the trial court's summary judgment to the Fourteenth Court of Appeals. The court of appeals, however, dismissed the appeal before ruling on the merits because Harkins & Munoz did not secure a final judgment against the physicians.

The Days then sued Harkins, individually, and Harkins & Munoz for legal malpractice, violations of the Deceptive Trade Practices Act, and breach of express and implied warranty. Harkins & Munoz moved for summary judgment, which the trial court granted. On appeal, the Days complain only that the trial court erred in granting summary judgment because the physicians owed a duty to treat Pradipta.

### STANDARD OF REVIEW

Summary judgment is proper only when a movant establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Bangert v. Baylor College of Medicine*, 881 S.W.2d 564, 566 (Tex.App.— Houston [1st Dist.] 1994, writ denied). In reviewing summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Johnson*, 891 S.W.2d at 644; *Marchal v. Webb*, 859 S.W.2d 408, 412 (Tex.App.— Houston [1st Dist.] 1993, writ denied). In reviewing a summary judgment, this Court will take all evidence favorable to the non-

---

[*] The Honorable Sam Bass, retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. The case was styled *Prodyot Day, et al. v. American Building Maintenance Industries, Inc. d/b/a*

*ABM Securities, et al.*, cause number 90–052626, in the 129th District Court of Harris County.

2. The settlement between the Days and the Summit is not at issue on this appeal.

movant as true. *Johnson,* 891 S.W.2d at 644; *Thompson v. Vinson & Elkins,* 859 S.W.2d 617, 619 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

Because the trial court granted the defendant's motion for summary judgment without specifying the grounds on which it granted the motion, we will affirm it if any of the movant's grounds are meritorious. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 378 (Tex.1993); *Jones v. Legal Copy, Inc.,* 846 S.W.2d 922, 924 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

## LEGAL MALPRACTICE STANDARD

 The plaintiff in a legal malpractice claim must prove that, but for his attorney's negligence, he would have prevailed on appeal. *Millhouse v. Wiesenthal,* 775 S.W.2d 626, 627 (Tex.1989); *Jackson v. Urban, Coolidge, Pennington & Scott,* 516 S.W.2d 948, 949 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.).

> The rationale for requiring this determination is that if the appeal would not have succeeded and the trial court judgment would have been affirmed, the attorney's negligence could not have caused the plaintiff any damage. On the other hand, if the appeal would have succeeded in reversing the trial court's judgment and obtaining a more favorable result, then the plaintiff sustained damage because of the attorney's negligence.

*Millhouse,* 775 S.W.2d at 627. Therefore, in this case, the Days must prove that, but for Harkins & Munoz's negligence, they would have prevailed on the medical malpractice suit.

## MEDICAL MALPRACTICE CAUSE OF ACTION

In two points of error, the Days argue the trial court erred in granting summary judgment because Harkins & Munoz did not negate the existence of a duty on part of the physicians in the medical malpractice lawsuit. While acknowledging that the physicians never treated Pradipta, the Days argue the duty to treat their son arose not from a doctor-patient relationship, but rather from the physicians' contractual relationship with the Summit.

Harkins & Munoz argue, however, that regardless of their negligence, the Days' appeal would have been futile because the physicians had no legal duty to treat Pradipta. They further contend that the physicians' contractual relationship with the Summit could not have created a duty to treat Pradipta as a matter of law.

 The plaintiff in a medical malpractice action must prove four elements: (1) a physician's duty to act according to a certain standard; (2) a breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. *White v. Wah,* 789 S.W.2d 312, 315 (Tex.App.—Houston [1st Dist.] 1990, no writ). Further, a physician may be held liable for medical malpractice only when a doctor-patient relationship exists. *Fought v. Solce,* 821 S.W.2d 218, 220 (Tex.App.—Houston [1st Dist.] 1991, writ denied). A doctor-patient relationship is established as a result of a contract, express or implied, that the doctor will treat the patient with professional skill. *Salas v. Gamboa,* 760 S.W.2d 838, 840 (Tex.App.—San Antonio 1988, no writ). The relationship is a consensual one and, when no prior relationship exists, the doctor must take some action to treat the patient before the relationship can be established. *Ortiz v. Shah,* 905 S.W.2d 609, 611 (Tex.App.—Houston [14th Dist.] 1995, no writ).

 The issue of negligence is not before us in this case, and the Days acknowledge that the physicians never treated Pradipta. Therefore, the issue before this Court is whether the physicians' contract with the Summit gave rise to a duty on part of the physicians to treat Pradipta.

The San Antonio Court of Appeals faced a similar issue in *Hand v. Tavera,* 864 S.W.2d 678 (Tex.App.—San Antonio 1993, no writ). Hand went to the Humana Hospital emergency room complaining of a three-day headache. The emergency room physician examined Hand and decided that he should be admitted to the hospital. While waiting for approval of the hospital, Hand presented a Humana Health Care Plan Card to the front

desk. Dr. Tavera, the doctor responsible for authorizing hospital admissions, denied Hand admittance and determined that Hand be treated as an outpatient. Hand left the hospital and later suffered a stroke. *Id.* at 678–79.

Hand sued Tavera and argued that as a member in the Humana Health Care Plan, Tavera owed him a duty of care. Hand contended that when the Hand–Humana contract is read together with the Humana–Tavera contract, he has a right to care from the doctor on call when his medical condition falls within Humana coverage. *Id.* at 680. The court agreed with Hand and held that when a health-care plan's insured shows up at a participating hospital emergency room, and the plan's designated doctor is consulted, the doctor-patient relationship exists and the doctor owes the patient a duty of care. *Id.*

In *St. John v. Pope,* the Supreme Court of Texas noted in dicta that a physician may agree in advance to a creation of a doctor-patient relationship. 901 S.W.2d 420, 422–23 (1995). While the issue in *Pope* dealt primarily with a non-contractual on-call physician, the court stated that "a physician's agreement with a hospital may leave the physician no discretion to decline treatment of a hospital's clients." *Id.*

While we agree with these holdings, they are not dispositive of this case. In *Hand,* the contracts showed that the Humana plan brought Hand and Tavera together just as if they had met directly and entered a doctor-patient relationship. *Hand v. Tavera,* 864 S.W.2d at 679. Hand purchased medical coverage from Humana, and accordingly, sought medical treatment from a Humana physician. *Id.* Here, Pradipta merely purchased a concert ticket from the Summit. Unlike Hand, Pradipta did not have a contractual right to treatment from the physicians.

Further, the *Hand* court based its opinion largely on the parties' contractual agreement. Because Hand asserted his rights under the entire health-care arrangement, rather than the Tavera–Humana contract in isolation, the court relied on the language of the contracts. In this case, however, the Summit-physician contract is not before the Court. The only evidence in the record re-

lated to the contract is the physicians' affidavits, referencing their contract with the Summit. Because we cannot review the terms and conditions of the contract, we are unable to determine whether the Summit-physician contract created a doctor-patient relationship between Pradipta and the physicians.

Likewise, in *Pope,* the court stated that a doctor-patient relationship may be created if the physician's contract with a hospital leaves the physician without discretion to decline treatment of the hospital's client. *Pope,* 901 S.W.2d at 423. Because the Summit-physician contract is not before the Court, we are unable to determine whether the physicians had the discretion to not treat a patient. The only evidence in the record relating to the physicians' duty to treat patrons consists of the physicians' affidavits—both stating they were to be available during the concert to render first aid to Summit patrons. Through their affidavits, the doctors denied that their contract with the Summit created a doctor-patient relationship with Pradipta and that the contract did not require them to treat Summit patrons once the event had ended or once they had left the premises. If any agreement divesting the physicians of the discretion to choose whether to treat a patient existed, it was incumbent on the Days to present it in order to preclude summary judgment.

■ After reviewing the record, we conclude the physicians' relationship with the Summit and its patrons is akin to an on-call physician. An agreement to be on-call does not in and of itself establish a doctor-patient relationship. *Fought,* 821 S.W.2d at 220. We therefore conclude that Harkins & Munoz established the lack of a doctor-patient relationship as a matter of law. Absent such a relationship, the physicians owed no duty to Pradipta.

Because the physicians owned no duty to Pradipta, the Days would not have prevailed on their medical malpractice suit regardless of Harkins & Munoz's negligence. The trial court's summary judgment in favor of Harkins & Munoz was proper.

We overrule points of error one and two.

We affirm the trial court's judgment.