Opinion issued August 3, 2006



     







In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00799-CV




GORDON ALLEN PRICE, Appellant

V.

EUGENE C. DIVITA, M.D. D/B/A GENE DIVITA, M.D., P.A., Appellee




On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2003-27512




O P I N I O N
          This is a medical malpractice action filed pursuant to the Medical Liability and
Improvement Act, former Tex. Rev. Civ. Stat. Ann. art. 4590i §§ 1.02–16.02, current
version at Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001–.507 (Vernon 2005),


 and
concluded by a no-evidence summary judgment


 rendered in favor of the defendant
psychiatrist, appellee, Eugene C. DiVita, M.D. d/b/a Gene DiVita, M.D., P.A. The
first of Price’s two points on appeal presents a broad challenge to the trial court’s
ruling. In the second point, Price contends he was denied due process because, in
rendering summary judgment, the trial court necessarily disregarded the expert
testimony that Price offered to defeat DiVita’s no-evidence motion. We affirm. 
Background
          Price is a former Texas attorney. When he sued DiVita in May 2003, Price hwas
serving a six-year prison sentence for misappropriation of client funds.


 In spring
2001, a psychologist who had been providing marital counseling for Price and his wife
administered a diagnostic test to Price his wife’s request. After determined that Price
“had a high ADD test,”


 the psychologist referred Price to DiVita for further
evaluation and for possible ADD medication. 
          Price first consulted DiVita in March 2001. At the conclusion of his evaluation,
DiVita determined, from his training and experience of about 40 years and the
symptoms that Price presented, that Price had ADD. He prescribed a 10 milligram
dose of Adderal® twice per day. DiVita also suggested that only a half dose be taken
for the first week, to determine the effect of the medication. His testimony and
treatment notes reflect Price’s informed consent to the medication, as well as DiVita’s
cautions about possible side effects of the medication. The initial dose was followed
by documented increases on April 9, 2001, to 20 milligrams twice a day, with possibly
less later in the day, and on June 5, 2001, to a total of 45 milligrams per day, with 30
milligrams in the morning and 15 milligrams in the afternoon. The increases were
made following sessions with DiVita in which Price reported progress and
improvement, especially with concentration. June 5, 2001 was Price’s last formal
session with DiVita. According to DiVita, the prescription given that day should have
lasted for 60 days. DiVita’s treatment notes reflect that Price did not return for
treatment after the June 5, 2001 session, but that Price contacted the office, stating that
he needed the medication, but was not able to come into the office. DiVita consented
to write a prescription for the same 45-milligram dosage, but for a 30-day supply only. 
DiVita had no further appointments with Price and did not see him again until
December 20, 2001, when he met with Price at a hospital at Price’s wife’s request. 
          By December 2001, Price had gambled away approximately $2,000,000. About
$800,000 of this amount came from his personal funds; Price had stolen the remainder
from his client-trust funds. On December 20, 2001, he drove to a police station, where
he surrendered and confessed the thefts. On the previous evening, Price had ingested
20 to 25 Adderal® tablets in an attempt to induce a fatal heart attack.
          Price’s pleadings state that he consulted DiVita because of marital problems, but
his summary judgment evidence acknowledges that the referral from the psychologist
was for an evaluation for ADD medication. Price claimed that DiVita negligently
diagnosed Price with ADD and negligently prescribed Adderal®, an amphetamine and
psychostimulant, for treatment without adequately investigating suitability of the drug
for Price or investigating Price’s personal and family history. In addition, Price
claimed that DiVita did not outline a treatment plan, did not apprise Price of the
addictive potential of Adderal®, and did not monitor him properly. Price claimed that
taking Adderal® caused him to become impulsive and “manic,” to feel invincible, and
to abuse alcohol, gamble compulsively, steal from his clients’ funds to finance the
gambling, take illegal drugs, including amphetamines, and consort with prostitutes. 
Price alleged that gambling casinos sent limousines for him and that the limousine
drivers provided both drugs and prostitutes for the trips to Louisiana. Price explained
that because the casinos were providing amphetamines, he was able to accumulate and
save the Adderal® that DiVita prescribed. According to Price, his behavior arising
from DaVita’s negligence resulted in gambling losses, a six-year imprisonment for
felony misapplication of fiduciary property (client funds disbursed for gambling and
expenses), divorce from his wife, estrangement from his family, loss of reputation, and
other actual and consequential damages.
          Price identified two expert witness, both forensic psychiatrists, Seth Silverman,
M.D., and Victor Scarano, M.D., J.D., chief of forensic pshychiatry at Baylor Medical
Center. Scarano had testified on Price’s behalf during the punishment phase of his
criminal trail. After deposing these experts, DiVita filed a no-evidence motion for
summary judgment that focused on the cause-in-fact component of the causation
element of Price’s claim. DiVita argued that no competent evidence existed to show
that any act or omission by him was the proximate cause of Price’s complaints. In
addition, and related to the causation issue, DiVita challenged the existence of any
evidence that his treatment of Price fell below the standard of care.
          Price responded to DiVita’s motion in part by disputing his challenges to the
substantial factor component of proximate cause. Price’s response incorporated
several evidentiary exhibits, including medical records, Price’s deposition testimony,
the deposition testimony of DiVita, Scarano, and Silverman, as well as affidavits and
reports by Scarano and Silverman. DiVita twice filed formal objections to Price’s
evidentiary exhibits, but the trial court signed an order overruling all of DiVita’s
objections. After an exchange of replies and responses, the trial court rendered
summary judgment in DiVita’s favor. On DiVita’s motion, the trial court modified
this judgment by signing a judgment specifying that summary judgment had been
rendered on no-evidence grounds. 
Rule 166a(i)—Standard of Review
          After adequate time for discovery has passed, the party without the burden of
proof at trial may move for summary judgment without presenting any evidence, by
contending that no evidence supported an essential element of the opponent’s claim
or defense. See Tex. R. Civ. P. 166a(i). The movant must, as DiVita did here, specify
the elements for which there is no evidence.


 See id.; Johnson v. Brewer & Pritchard,
P.C., 73 S.W.3d 193, 207 (Tex. 2002). The burden then shifted to Price to respond to 
DiVita’s motion with probative summary judgment evidence that was sufficient to
raise a genuine issue of material fact on the challenged causation element of Price’s
malpractice claim. See Tex. R. Civ. P. 166a(i); Morgan v. Anthony, 27 S.W.3d 928,
929 (Tex. 2000) (citing Flameout Design & Fabrication, Inc. v. Pennzoil Corp., 994
S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.)). To meet his burden
as nonmovant, Price had only to present more than a scintilla of evidence that raised
a material issue of fact on the causation element of his malpractice claim. See Little
v. Tex. Dep’t of Criminal Justice, 148 S.W.3d 374, 379 (Tex. 2004). More than a
scintilla of evidence occurs if what is offered to defeat the no-evidence motion would
allow reasonable and fair-minded people to differ in their conclusions; less than a
scintilla occurs when what is offered in opposition to a no-evidence motion is so weak
that it gives rise to mere surmise or suspicion. Forbes, Inc. v. Granada Biosciences,
Inc., 124 S.W.3d 167, 172 (Tex. 2003). If Price did not produce more than a scintilla
of evidence in opposition to raise an issue of material fact, the trial court had no choice
but to grant DiVita’s motion. See Tex. R. Civ. P. 166a(i) & cmt.; Sw. Elec. Power Co.
v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Rueda v. Paschal, 178 S.W.3d 107, 108
(Tex. App.—Houston [1st Dist.] 2005, no pet.). 
          On appeal, we review summary judgments de novo. Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). Our review is necessarily limited,
however, to the grounds asserted in the motion, the response, and any evidence that
accompanied the response. See Tex. R. Civ. P. 166a(c) (“Issues not expressly
presented to the trial court by written motion, answer or other response shall not be
considered on appeal as grounds for reversal.”); see also McConnell v. Southside
Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993) (stating that courts may not rely
on parties’ briefs or summary judgement evidence in “determining whether grounds
are expressly presented”). We take all summary judgment evidence as true and review
it in the light most favorable to the party against whom the no-evidence summary
judgment was rendered. Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157
(Tex. 2004); see City of Keller v. Wilson, 168 S.W.3d 802, 824 (Tex. 2005) (noting
standard). On reviewing the record in that light, if we conclude that the nonmovant,
Price, brought forward more than a scintilla of probative evidence that raised a
genuine issue of material fact on the causation element of his medical malpractice
claim, then we must hold that the no-evidence summary judgment was not proper and
reverse. See Forbes, 124 S.W.3d at 172. When, as here, the trial court does not
specify which of the no-evidence grounds proposed by DiVita’s motion was
dispositive, we may affirm on any ground offered by DiVita that has merit and was
preserved for review. See State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380
(Tex. 1993) (Tex. R. Civ. P. 166a(c) motion); Taylor v. Carley, 158 S.W.3d 1, 8 (Tex.
App.—Houston [14th Dist.] 2004, pet. denied) (Tex. R. Civ. P. 166a(i) motion). 
Discussion 
A.      Elements of Medical Malpractice Claim
          To prevail at trial on his claim of medical malpractice, Price’s burden would
have been to establish a “reasonable medical probability” that DiVita’s acts or
omissions proximately caused Price’s alleged injuries. See Park Place Hosp. v. Estate
of Milo, 909 S.W.2d 508, 511 (Tex. 1995); Duff v. Yelin, 751 S.W.2d 175, 176 (Tex.
1988). Meeting that burden requires proof of the following elements: (1) that DiVita
had a duty to comply with a specific standard of care; (2) that DiVita breached that
standard of care; (3) that Price was injured; and (4) that there was a causal connection
between the breach of the standard of care and the injury. See former Tex. Rev. Civ.
Stat. Ann. art. 4590i, §1.03(a)(4), current version at Tex. Civ. Prac. & Rem. Code
Ann. § 74.001(13) (Vernon 2005) (including a cause of action against a physician
within definition of “health care liability claim”); Day v. Harkins & Munoz, 961
S.W.2d 278, 280 (Tex. App.—Houston [1st Dist.] 1997, no writ); see also IHS Cedars
Treatment Ctr. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004) (generally stating elements
of negligence claim). 
B.      “Cause in Fact” or “Substantial Factor” Test for Causation
          The causation element of a negligence claim comprises the two following
components: the cause in fact, or “substantial factor,” component and the
foreseeability component. IHS Cedars Treatment Ctr., 143 S.W.3d at 798; Leitch v.
Hornsby, 935 S.W.2d 114, 118–19 (Tex. 1996); Travis v. City of Mesquite, 830
S.W.2d 94, 98 (Tex. 1992). Foreseeability requires that a person of ordinary
intelligence would have anticipated the danger caused by the negligent act or
omission. Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex.
1995). Because both elements are required, a party who establishes only that an injury
was foreseeable cannot prevail. 
          To defeat DiVita’s motion for no-evidence summary judgment on the cause-in-fact component of causation, Price had to present more than a scintilla of evidence that
(1) DiVita’s acts or omissions were “a substantial factor” in bringing about Price’s
claimed injuries and that (2), without DiVita’s act or omission, those injuries would
not have occurred. See IHS Cedars Treatment Ctr., 143 S.W.3d at 799 (citing Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 472 (Tex. 1991) (in turn quoting and adopting
Restatement (second) of Torts § 431 cmt. a (1965)); Lee Lewis Constr., Inc. v.
Harrison, 70 S.W.3d 778, 784 (Tex. 2001); Union Pump Co. v. Allbritton, 898 S.W.2d
773, 775 (Tex. 1995). 
          Merely showing that Price’s claimed injuries would not have occurred but for
DiVita’s alleged negligence is not sufficient. DiVita’s alleged negligence must have
been a substantial factor in bringing about Price’s claimed harm. See IHS Cedars
Treatment Ctr., 143 S.W.3d at 799 (citing Lear Siegler, 819 S.W.2d at 472); see also
Boys Clubs, 907 S.W.2d at 477 (explaining that defendant’s conduct may be too
attenuated to constitute legal cause of alleged injury “even if the injury would not have
happened but for the defendant’s conduct”) (citing Union Pump Co., 898 S.W.2d at
776; Lear Siegler, 819 S.W.2d at 472). Accordingly, evidence that shows only that
the defendant’s alleged negligence did no more than furnish a condition that made the
alleged injuries possible will not suffice to establish the substantial-factor, or cause-in-fact, component of proximate cause. See IHS Cedars Treatment Ctr., 143 S.W.3d at
799 (citing Boys Clubs, 907 S.W.2d at 477; Union Pump, 898 S.W.2d at 776; Lear
Siegler, 819 S.W.2d at 472). 
          Because proving the elements of a medical malpractice claim generally requires
expert testimony, Hood v. Phillips, 554 S.W.2d 160, 165-66 (Tex. 1977), that is
premised on “reasonable medical probability,” Park Place Hosp., 909 S.W.2d at 511,
opinion testimony that amounts to “mere conjecture, guess, or speculation” will not
suffice. IHS Cedars Treatment Ctr., 143 S.W.3d at 798-99. Expert opinion testimony
that is conclusory or speculative does not tend to make the existence of a material fact
“‘more or less probable.’” Coastal Transp. Co. v. Crown Cent. Petroleum. Corp., 136
S.W.3d 227, 232 (Tex. 2004) (quoting Tex. R. Evid. 401). Conclusory or speculative
expert opinion is neither relevant nor competent. Coastal Transp. Co., 136 S.W.3d
at 232. There is no need to go beyond the face of the record to test the reliability of
expert testimony that is challenged, as here, as merely conclusory or speculative on its
face. Id. at 233.
C.      No Evidence that Act or Omission by DiVita Was Substantial Factor 
          1.       Alleged Knowledge of Propensity
          Price’s contentions on appeal, as in the trial court, are grounded in the premise
that DiVita acknowledged that Price had abused controlled substances and should not
have prescribed Adderal® for Price because of his “propensity,” specifically, his
addictive personality disorder, i.e., his tendency to drug addiction. Price bases this
premise on the deposition testimony of both of his expert-psychiatrists. Silverman
explained, for example, that a person with this disorder “would become addicted to the
amphetamine very quickly.” Price also relies on the Physician’s Desk Reference
(PDR), contending that it contraindicates Adderal® for a person with this disorder. 
Yet, the list of contraindications in the version of the PDR in the summary judgment
record does not specify persons with “addictive personality disorder” and states,
instead, “patients with a history of drug abuse.”
          The summary judgment record further demonstrates, however, that the
psychiatrists’ descriptions of Price as suffering from addictive personality disorder
derive from examinations conducted on Price after he surrendered and confessed the
thefts to police. The experts’ opinions further derive from Price’s having, by that time,
disclosed his history of abuse of controlled, addictive substances. Although these
experts’ opinions presume that DiVita was aware of Price’s history of abuse of
addictive drugs, i.e., amphetamines, the summary judgment evidence does not
establish that Price disclosed that history to DiVita, and, therefore, does not show that
DiVita, too, had that same knowledge of his “propensity.” 
          It is undisputed that Price had a very high score on the ADD diagnostic test
administered by the psychologist who referred Price to DiVita. The psychologist
administered the test on request, after Price’s wife reported that the husband of an
acquaintance had been diagnosed with ADD and was much improved by Adderal®
therapy. ADD, and symptoms consistent with ADD, according to DiVita’s deposition
testimony and treatment notes, were Price’s chief complaints in his first meeting with
DiVita on March 26, 2001. DiVita’s deposition testimony interpreting his treatment
notes indicates that, based on his training and experience, he diagnosed Price with
ADD. Although the summary judgment record indicates that the first of the many 
gambling trips that Price made in 2001 occurred on the day after his second session
with DiVita, the summary judgment record further demonstrates that Price reported
only continuing progress and improved ability to concentrate during his three follow-up sessions with DiVita. 
          In his deposition testimony, DiVita acknowledged that other psychostimulants
and amphetamines are contraindications for Adderal®, which is classified as a
psychostimulant and amphetamine. DiVita also acknowledged that taking Adderal®
would result in “painful and destructive consequences” for Price “if” he was using
amphetamines and other drugs. (Emphasis added.) As confirmed by DiVita’s
treatment notes, however, Price reported taking only an over-the-counter medication
for his reported daily migraines and a prescription medication, not a psychostimulant,
for a back injury. DiVita also acknowledged that Price disclosed experimenting with
marihuana in his youth and an extensive, but prior, history of alcohol abuse, including
a lengthy treatment and rehabilitation program for alcohol abuse that was followed by
eight years of sobriety with only one relapse. DiVita’s treatment notes and testimony
unequivocally state, however, that the Adderal® he prescribed was the only
psychostimulant that Price was taking. 
          Because the psychiatrists’ expert opinions condemning DiVita’s prescribing
Adderal® for Price presume that he, like they, also had knowledge of Price’s
propensity for addictive behavior consistent with controlled substance abuse, and
because the summary judgment record does not demonstrate that DiVita had that
knowledge, their opinions that he was negligent in prescribing Adderal® to Price
amount to surmise, conjecture, or speculation. Accordingly, their expert opinions are 
no evidence of either the cause-in-fact or the foreseeability components of proximate
cause and thus do not give rise to a triable issue of fact concerning proximate cause. 
See IHS Cedars Treatment Ctr., 143 S.W.3d at 798-99; Coastal Transp. Co., 136
S.W.3d at 232; Forbes, 124 S.W.3d at 172. 
          2.       “Trigger Mechanism”
          Price emphasizes that both psychiatrists were firmly convinced that DiVita’s
prescribing Adderal® was the critical factor—in short, the “but for” element— that
began the addictive, risk-taking, impulsive, and self-destructive behavior that
culminated in the injuries for which Price sought compensation. Silverman, in
particular, described Adderal® as “the most likely cause” or “necessary factor” for
Price’s behavior. Scarano referred to Adderal® as “the trigger.”
          Yet, both experts reneged and ultimately declined to state, definitively, that
DiVita’s prescribing Adderal® was a substantial factor in producing Price’s claimed
injuries. Scarano would say only “to a reasonable degree of medical certainty” that
“use of these drugs was related to” Price’s conduct. (Emphasis added.) When asked
directly in his deposition whether Price “would not have engaged in theft and
debauchery but for his use of Adderal®, Scarano replied, “I don’t think I can say that.” 
When asked why he could not, Scarano explained, “I’m claiming that the use of
[Adderal®] was related to his conduct. I’m not saying that it could never have
happened without [Adderal®].” (Emphasis added.) Similarly, in response to a
question from Price’s own counsel during his deposition, Silverman expressed
hesitancy to state “that the Adderal® was a proximate cause of the deterioration of
[Price’s] behavior.” Silverman would only state that Adderal® was “one of the causes
of it.” Finally, according to Scarano’s deposition testimony, Price became
amphetamine-dependent when he combined Adderal® with other drugs that he
claimed the casinos provided. 
          “But for” causation will not be sufficient to substantiate the necessary
substantial-factor component of proximate cause when evidence shows that the
defendant’s conduct is too attenuated from the claimed injury and did no more than
furnish a condition that made those alleged injuries possible. See IHS Cedars
Treatment Ctr., 143 S.W.3d at 799 (citing Boys Clubs, 907 S.W.2d at 477; Union
Pump, 898 S.W.2d at 776; Lear Siegler, 819 S.W.2d at 472). Scarano’s and
Silverman’s opinion testimony, however, does not rise even to the level of but-for
analysis. At most, the experts state that DiVita furnished a condition that initially
made Price’s later-claimed injuries possible. 
          Neither expert proceeds beyond stating that DiVita’s prescribing Adderal® as
“related” to his claimed injuries. Yet, neither provides guidance concerning whether
prescribing Adderal® was significantly, or, more precisely, substantially related to
Price’s claimed injury, to the degree required to raise a fact issue for the substantial-factor element of proximate cause. By stating only that prescribing Adderal® was
“related” to Price’s claimed injuries, his experts stated only that prescribing Adderal®
was “a factor” for those injuries. But proximate cause demands proof that DeVita’s
conduct was a substantial factor in the injuries Price claims. See id. His experts’
testimony, therefore, amounts to mere speculation and thus does not give rise to more
than a scintilla of evidence to raise a material issue of fact for substantial-factor
analysis and is, therefore, no evidence. 
          We overrule Price’s first issue.
Due Process Challenge
          In his second point, Price contends that, in rendering summary judgment 
DiVita’s favor, the trial court effectively and necessarily refused to consider and
evaluate his experts’ opinion testimony.


 The essence of this complaint is that the trial
court erred by not conducting a hearing to determine the reliability of Price’s experts’
testimony. Conclusory or speculative opinion testimony does not tend to make the
existence of a material fact “more or less probable” and is neither relevant nor
competent. Coastal Transp. Co., 136 S.W.3d at 232 (quoting Tex. R. Evid. 401). A
trial court presented with purported evidence that is merely conclusory or speculative
on its face need not go beyond the face of the record to test its reliability. Coastal
Transp. Co., 136 S.W.3d at 233. 
          We overrule Price’s second point of error. 
Conclusion
          We affirm the judgment of the trial court.
 
 
 
Sherry Radack
Chief Justice
 
Panel consists of Chief Justice Radack and Justices Taft and Nuchia.