Opinion issued April 14, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01‑10‑00437‑CV

———————————

Arunkumar J. Shah, M.D. and Larry H. Penick, M.D., Appellants

V.

Tony Kmiec, Individually as
Wrongful Death Beneficiary of Geraldine Kmiec, Deceased, AND on Behalf of the
Estate of Geraldine Kmiec, Deceased,
Appellee



 



 

On Appeal from the 155th District Court

Austin County, Texas



Trial Court Case No. 2010V-0023

 



 

MEMORANDUM OPINION

This
interlocutory appeal is from the denial of two motions to dismiss filed by
appellants, Arunkumar J. Shah, M.D. and Larry H. Penick, M.D., in the medical‑malpractice
suit filed against them by appellee, Tony Kmiec, individually as wrongful
death beneficiary of Geraldine Kmiec, deceased, and on behalf of the estate of
Geraldine Kmiec, deceased.  Because
the expert report submitted on behalf of Tony Kmiec satisfied the
requirements of chapter 74 of the Civil Practice and Remedies Code, we affirm.

Background

          Suffering
pain in her right lower quadrant and experiencing nausea and vomiting, seventy‑seven
year old Geraldine Kmiec went to Bellville General Hospital the evening of
Saturday, October 25, 2008.  Ms. Kmiec was
seen by her regular physician as well as Dr. Shah, an emergency room physician,
before she was sent for blood work and X rays. 
Upon receipt of these results, Ms. Kmiec was discharged from the
hospital with a diagnosis of abdominal pain, constipation, renal insufficiency
and hypokalemia (low potassium)
and given prescriptions for a potassium supplement and medications for
abdominal cramping and constipation.  Although
her prescriptions were apparently written by Dr. Shah, Ms. Kmiec’s medical records identify Dr.
Penick as the prescribing physician.

          The next afternoon, October 26, Ms. Kmiec
was found breathing but unresponsive in her bathroom, and was taken by
ambulance to Trinity Medical Center, where she died due to sepsis
and multi‑organ failure.  On the
day after her death, a Bellville Hospital radiologist reviewed the abdominal X ray taken two days
earlier and documented the presence of intraperitoneal air, which indicated that
Ms. Kmiec’s bowel was perforated.

          Tony Kmiec, her son, filed the medical
malpractice suit against Drs. Shah and Penick and two other defendants.[1]  The defendants were timely served with the expert
report and curriculum vitae of Tony Kmiec’s expert, Dr. William Spangler, but
both Drs. Shaw and Penick filed and served objections to this expert report as
well as motions to dismiss based upon those objections.  After a hearing, the trial court denied both
Drs. Shah’s and Penick’s motions to dismiss and this appeal followed.[2]

Discussion

          Drs. Shaw and Penick
contend that the trial court abused its discretion when it denied their motions
to dismiss because Dr. Spangler’s expert report failed to satisfy the
requirements of chapter 74 of the Civil Practice and Remedies Code.  Specifically, Drs. Shaw and Penick contend that the expert report
does not represent a good‑faith effort to comply with the statutory
requirements because (1) it fails to specify which defendant is responsible for
each alleged act of negligence, (2) Dr. Spangler’s opinions regarding the alleged
breaches are based upon assumption and speculation, and (3) Dr. Spangler fails
to link the alleged breaches to Ms. Kmiec’s death.  Drs. Shaw and Penick further contend that as to Dr.
Penick, the report amounts to “no report” because it never alleges that he
enjoyed a physician‑patient relationship with Ms. Kmiec.

Standard
of Review

          We review a trial court’s decision regarding
chapter 74 for an abuse of discretion.  See Am. Transitional Care Ctrs. v.
Palacios, 46 S.W.3d 873, 877 (Tex. 2001); Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West
Supp. 2010).  A trial
court abuses its discretion if it acts in an arbitrary or unreasonable manner
or without reference to any guiding rules or principles.  See Walker v. Gutierrez, 111 S.W.3d 56, 62
(Tex. 2003).  When reviewing matters
committed to the trial court’s discretion, we may not substitute our own
judgment for that of the trial court.  Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992).  Although we defer to the trial court’s factual
determinations, we review questions of law de novo.  Rittmer v. Garza, 65 S.W.3d 718, 722
(Tex. App.—Houston [14th Dist.] 2001, no pet.). 
To the extent that resolution of the issue before the trial court
requires interpretation of the statute itself, we apply a de novo standard.  Buck v. Blum, 130 S.W.3d 285, 290 (Tex.
App.—Houston [14th Dist.] 2004, no pet.).

Chapter
74 Expert‑Report Requirements

          If, after
hearing, the expert report does not represent a good‑faith effort to
comply with chapter 74’s requirements for an expert report, the trial court
shall grant the motion to dismiss.  See Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(l), (r)(6) (West Supp. 2010); Palacios, 46 S.W.3d at 877.  For the purposes of section 74.351(r)(6), the report need be rendered by one
qualified as an expert to testify on the relevant medical subject area.  See
Hansen v. Starr, 123 S.W.3d 13, 20 (Tex. App.—Dallas 2003, pet. denied).

          Our
evaluation requires a determination of whether the report “represents a good‑faith
effort” to comply with the statute.  Strom v. Mem’l Hermann Hosp. Sys.,
110 S.W.3d 216, 221 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).  While the report need not marshal all of
plaintiff’s proof, it must include the expert’s opinions on the three statutory
elements—standard of care, breach, and causation.  See Palacios, 46 S.W.3d at 878, 880;
Spitzer v. Berry, 247 S.W.3d 747, 750 (Tex. App.—Tyler 2008, pet. denied)
(quoting Palacios, 46 S.W.3d at 880) (stating “fair summary” is
“something less than a full statement” of the applicable standard of care, how
it was breached, and how that breach caused the injury).

          In
detailing these elements, the expert report must provide enough information to
fulfill two purposes in order to constitute a good‑faith effort: (a) inform
the defendant of the specific conduct the plaintiff has called into question
and (b) provide a basis for the trial court to conclude that the claims have
merit.  Palacios, 46 S.W.3d at
879.  A report that merely states the
expert’s conclusions as to the standard of care, breach, and causation does not
fulfill these two purposes. id., because the basis for his statements need
be explained and his conclusions linked to the facts.  Bowie
Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002) (citing Earle
v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999)).  Further, in assessing the report’s
sufficiency, the trial court is not to draw inferences, but rely exclusively on
the information contained within the four corners of the report.  See Palacios, 46 S.W.3d at 878.

Adequacy of Dr. Spangler’s Report with Respect to Standard of Care and
Breach

          

          Drs. Shaw and Penick argue the expert report
is insufficient on the issue of standard of care and breach with respect to
both doctors because it applies the same standard to each without appropriate explanation,
fails to specify which defendant is responsible for each alleged act of
negligence, and assumes that Drs. Shah and Penick failed to take certain
actions “without pointing to any factual evidence.”[3]

          Drs. Shaw and Penick also contend that
Dr. Spangler’s report is so deficient as to standard of care that it is “no
report” at all as to Dr. Penick because the expert report never alleges a
physician‑patient relationship between Dr. Penick and Ms. Kmiec, absent
which, no duty of care arises.  Drs. Shaw
and Penick thus further contend that the standard‑of‑care and
breach opinions are likewise insufficient as to Dr. Penick because they are
based upon this assumption of a duty of care.

          Specifically, the expert report states
that the standard of care required Dr. Shah, inter alia, to “perform a proper physical
examination on Ms. Kmiec and document, in writing, the examination,” review the
results of the blood tests and abdominal X rays that he ordered, correctly
read those X rays (which showed intraperitoneal air indicative of an intestinal leak or
perforation), and order a surgical consultation and admit Ms. Kmiec to the
hospital rather than discharging her “with clear evidence of an intestinal
perforation and persistent significant pain.” 
The Spangler report clearly states that Dr. Shah breached the applicable
standard of care when he failed to take each of these specific actions.

          With respect to Dr. Penick, the Spangler
report states that the applicable standard of care required him to neither authorize
nor prescribe medication to Ms. Kmiec without first examining her and absent a
specific, documented reason to do so.  The
standard of care required Dr. Penick, a treating physician, to those same steps
required by Dr. Shah, i.e., written documentation of a proper physical
examination on Ms. Kmiec, review of the results of the blood tests and
abdominal X rays, a correct reading of the X rays, order a surgical consultation and
admit Ms. Kmiec to the hospital rather than discharging her “with clear
evidence of an intestinal perforation and persistent significant pain.”  Dr. Spangler concludes that, as with Dr.
Shah, Dr. Penick breached the applicable standard of care by his failure to
take each of these specific actions.

          Having done so, the report not only provided
both Drs. Shah and Penick with a fair summary of the applicable standard of
care and each doctor’s failure to meet it, but also informed both doctors of
the specific conduct that Tony Kmiec has called into question.  See Palacios, 46 S.W.3d at 879–80. 
Thus, pursuant to Palacios and
its progeny, Dr. Spangler’s report is sufficient as to both Drs. Shah and Penick
with regard to both the standard of care and its breach.

          Application of the same standard of
care to both doctors does not render the expert report insufficient.  Both Drs. Shah and Penick treated Ms. Kmiec
for abdominal pain, nausea,
and vomiting either by examining her and ordering lab work and X rays, or
prescribing medication.  The expert
report, therefore, sufficiently explains why both doctors are to be held to the
same standard.  See generally San Jacinto Methodist Hosp. v. Bennett, 256
S.W.3d 806, 817 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (“Although [the
expert]’s opinion for each defendant is identical, he unquestionably provided
an opinion for each [defendant].  That he
held each defendant to the same standard of care, found the same type of
breach, and analyzed causation in the same way does not render his opinion
inadequate.”); Romero v. Lieberman,
232 S.W.3d 385, 391–92 (Tex. App.—Dallas 2007, no pet.) (concluding report
alleging “one size fits all” standard of care was sufficient as to general
practitioner and psychiatrists because all three physicians participated in
treating patient’s condition).

          That Dr. Spangler
never definitively stated that a physician‑patient relationship existed
between Dr. Penick and Ms. Kmiec does not render his report insufficient.  The existence of a physician‑patient
relationship, however, is a question of
law.  See
Majzoub v. Appling, 95 S.W.3d 432, 436 (Tex. App.—Houston [1st
Dist.] 2002, pet. denied) (concluding
that, as a matter of law, no physician‑patient
relationship existed).  The duty to treat a patient with proper
professional skill flows from the consensual relationship between the patient
and physician, and only when that relationship exists can there be a breach of
a duty resulting in medical malpractice.  St. John v. Pope, 901 S.W.2d 420, 424 (Tex. 1995).  A physician‑patient relationship
can exist even if a physician does not deal directly with a patient, so long as
the physician has taken some affirmative action to treat the patient.  Id.;
see also Day v. Harkins & Munoz, 961 S.W.2d 278, 280 (Tex.
App.—Houston [1st Dist.] 1997, no pet.); Lection v. Dyll, 65 S.W.3d 696,
705 (Tex. App.—Dallas 2001, pet. denied) (“[O]n‑call physician may assume
a duty to the patient if he takes some affirmative action to treat the
patient.”).

          Although
Dr. Spangler’s report states that “[o]n the basis of the prescriptions written
for Ms. Kmiec labeled with Dr. Penick’s name, there may have been a
doctor-patient relationship established between Dr. Larry Penick and Ms.
Kmiec,” he also goes on to state:

As a result of
Dr. Penick’s name appearing on the prescription bottles, there was a duty owed to Ms. Kmiec by Dr. Penick to do what a
reasonable physician would have done under the same or similar circumstances,
or not to do what a reasonable physician would not have done under the same or
similar circumstances.

 

(Emphasis added).  As such, Dr. Spangler has alleged, based upon
Ms. Kmiec’s medical records, that Dr. Penick treated Ms. Kmiec—specifically,
that he prescribed medication to treat her abdominal pain.  He then definitively states that, as a result
of the treatment he provided, Dr. Penick owed a duty of care to Ms. Kmiec.[4]  Accordingly, the Spangler report sufficiently alleged that the
duty owed by Dr. Penick to Ms. Kmiec and Dr. Spangler’s opinions regarding the
standard of care applicable to the doctors’ breaches of that standard are based
upon their duty as her treating physicians.

Adequacy
of Dr. Spangler’s Report with Respect to Causation

          Drs.
Shaw and Penick contend that Dr. Spangler’s report is also insufficient as to causation
because it is conclusory and Dr. Spangler fails to link the alleged breaches to
the harm—Ms. Kmiec’s death.  Dr. Spangler,
in pertinent part, states in his report:

[w]ithout
actually examining her abdomen, there was no way for Dr. Shah to evaluate what
was going on and what could be causing her abdominal pain. In reasonable
medical probability, if he had properly examined Ms. Kmiec, given the evidence
of intra‑peritoneal free air due to intestinal perforation, she would
have exhibited signs and symptoms of pain on examination, often exacerbated by
pressure in different areas of the abdomen, and/or rebound and guarding,
symptoms of a surgical abdomen.  In
addition, an intestinal perforation is often accompanied by bleeding.  If Dr. Shah had performed a rectal
examination to check for occult blood, in reasonable medical probability, the
test would have been positive, providing further evidence of the need for
hospital admission and surgical evaluation. 
In reasonable medical probability, if Dr. Shah would have obtained a
surgical consult, the surgeon would have seen the free air on the x‑ray
and taken Ms. Kmiec to surgery for exploration.  Given her vital signs and laboratory data, Ms.
Kmiec was not yet septic at the time she was seen and in reasonable medical
probability, surgical repair of the perforation would have been successful.  Because he failed to perform a proper physical
examination, and document it in writing, Dr. Shah never appreciated the extent
of the abdominal pain and never obtained a general surgical consultation.  This failure to perform a proper physical
examination and document it in writing was a direct and contributing cause of
her death.

. . . .

In reasonable medical
probability, if Dr. Shah had reviewed the lab tests and x‑ray, he would
have realized that Ms. Kmiec was not constipated but had a serious abdominal
problem which needed investigation, including consultation with a general
surgeon.  Additionally, Dr. Shah failed
to review and document his evaluation of the abdominal x‑ray which clearly
showed free intraperitoneal air, a classic sign of intestinal perforation which
requires immediate general surgery consultation. If he had reviewed and
correctly interpreted the lab tests and x‑ray, he would have obtained a
general surgery consultation, and in reasonable medical probability, Ms. Kmiec
would have undergone exploratory surgery, the source of the intestinal leak or
perforation would have been discovered and corrected and she would have
survived.  Because Dr. Shah failed to
review and document his evaluation of the lab tests and x‑rays, in
reasonable medical probability, he sent her home with prescriptions for
constipation and abdominal cramps instead of obtaining a general surgery
consultation.  In reasonable medical
probability, Ms. Kmiec was sent home where she continued to leak bacterial
contents, which caused a dramatic increase in bacterial contamination, leading
to peritonitis and sepsis and causing her death.

. . . .

Dr. Shah failed
to obtain a surgical consultation and admit Ms. Kmiec to the hospital, in spite
of the clear radiographic evidence of free air under the diaphragms and
intestinal perforation.  In reasonable
medical probability, if Dr. Shah had admitted Ms. Kmiec to the hospital, she
would have been seen by a surgeon, she would have been taken to the operating
room in a timely fashion for repair of the intestinal perforation, and she
would have survived.  Because Dr. Shah
failed to admit her to the hospital, Ms. Kmiec was discharged from the hospital
with a life‑threatening condition.  Dr. Shah’s failure to admit Ms. Kmiec
prevented her from obtaining a surgery consultation which, in reasonable
medical probability directly led to her death the following day.

. . . .

Dr. Shah
negligently discharged Ms. Kmiec when there was clear radiographic evidence of
free air under the diaphragms and intestinal perforation.  If he had not negligently discharged Ms.
Kmiec, in reasonable medical probability, she would have been admitted to the
hospital, seen by surgery, undergone the appropriate surgical procedure and
would have survived.

 

Dr.
Spangler then repeats these same statements as to Dr. Penick.  Having done so, Dr. Spangler’s report is
sufficient with regard to the element of causation because he explains the
basis for his statements and he links Dr. Shah’s and Dr. Penick’s alleged
conduct with Kmiec’s injuries.  See Bowie Mem’l Hosp., 79 S.W.3d at 52 (citing Earle v. Ratliff,
998 S.W.2d 882, 890 (Tex. 1999)).  Dr.
Spangler’s opinions are not based upon mere conjecture, but rather “reasonable
medical probability.”

Tony Kmiec’s s
Request for Sanctions

          In his
response to Dr. Shah’s and Dr. Penick’s appellate brief, Tony
Kmiec requested that this Court impose
sanctions against Drs. Shah and Penick for
filing a frivolous appeal.  See Tex.
R. App. P. 45 (authorizing imposition of sanctions for filing of
frivolous appeal).  Tony
Kmiec argues that there is no reasonable ground for believing that the
trial court’s denial of the motion to dismiss would be reversed because Dr.
Spangler’s report, which “explains in great detail” the standards of care
required of Drs. Shah and Penick, how those standards were breached, and how
those breaches caused Kmiec’s death, satisfies the requirements of chapter 74.

          After considering the record, briefs, or
other papers filed in this Court, we may award a prevailing party damages if we
objectively determine that an appeal is frivolous.  Tex. R. App. P. 45; Smith v. Brown, 51 S.W.3d
376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).  An appeal is frivolous when the record, viewed
from the perspective of the advocate, does not provide reasonable grounds for
the advocate to believe that the case could be reversed.  Smith, 51 S.W.3d at 381.  The decision to
grant appellate sanctions is a matter of discretion that an appellate court
exercises with prudence and caution and only after careful deliberation.  Id. 
Although
imposing sanctions is within our discretion, we will do so only in
circumstances that are truly egregious.  See id.  While we disagree with the merits of the appeal,
after considering the record and briefs, we do not believe the circumstances in
this case warrant sanction.  Accordingly,
we overrule Tony Kmiec’s request
for Rule 45 sanctions.

 

 

 

 

 

Conclusion

          We affirm
the trial court’s order denying Dr. Shah’s and Dr. Penick’s motions to dismiss
and deny the request for sanctions.

 

 

                                                                   Jim
Sharp

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Sharp.











[1]           Although Southwest Medical Associates, Inc. and
Bellville General Hospital were also named as defendants in this case, neither
defendant is a party to this appeal.





[2]
          Section 51.014(a)(9) of the Civil
Practice and Remedies Code specifically permits the appeal of an interlocutory
order from a district court that “denies all or part of the relief sought by a motion” seeking to dismiss a plaintiff's claim for
failure to meet the expert report
requirements.  Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West
2008).





[3]           Specifically, Tony Kmiec takes issue with the
fact the Dr. Spangler assumes that neither Drs. Shah nor Penick performed an
abdominal exam on Ms. Kmiec, reviewed the results of her blood tests, or
reviewed her abdominal X rays.  Dr.
Spangler’s statements, however, are expressly based upon the fact that Ms. Kmiec’s
medical records do not reference any such exam or review by either doctor.

Tony
Kmiec also contends that Dr. Spangler’s assumptions are not only erroneous, but
refuted by the very documentation Dr. Spangler relied upon in forming in his
opinions.  Even if Tony Kmiec is correct,
he has not challenged Dr. Spangler’s opinions with regard to the other
negligent acts asserted against Drs. Shah and Penick , i.e., failure to seek
surgical consult, failure to correctly interpret the results of Ms. Kmiec’s
laboratory work and X rays.





[4]           The fact that Dr. Spangler
acknowledges in his report that some of the facts set forth in Ms. Kmiec’s
medical records may be inaccurate does not affect the sufficiency his
report.  Except under very limited
circumstances, chapter 74 expert reports must be filed before discovery is
allowed to proceed in a given case.  As a
result, experts have little choice but to rely upon the facts set forth in a
patient’s medical records and proceed on the implicit assumption that the
information contained within those records is accurate.