Roberto **SALAS**, Jr., and Dolores A. Salas, Individually and on Behalf of Roberto Salas III, Deceased, Appellants,

v.

Jose **GAMBOA**, M.D., Appellee.

No. 04-88-00311-CV.

Court of Appeals of Texas, San Antonio.

Nov. 30, 1988.

Clem Lyons, Stephen Dittlinger, Southers & Lyons, San Antonio, for appellants.

Sharon E. Calloway, Cynthia Day King, Groce, Locke & Hebdon, San Antonio, for appellee.

Before ESQUIVEL, BUTTS and REEVES, JJ.

## OPINION

BUTTS, Justice.

This is a summary judgment case. TEX. R.CIV.P. 166a. Appellants, Roberto Salas, Jr. and Dolores A. Salas, individually and on behalf of their deceased son, Roberto Salas, III, sued Jose Gamboa, M.D. and Southwest General Hospital, pursuant to TEX.REV.CIV.STAT.ANN. art. 4590i (Vernon Supp.1988). In their health care liability claim against the hospital and Dr. Gamboa, plaintiffs alleged that both were negligent in refusing to provide emergency medical care to their child, and the refusal proximately caused the death of the child and the injuries and damages sustained by plaintiffs.

The trial court granted Gamboa's motion for summary judgment and severed the case, making this judgment final.

The record discloses that the mother gave birth to the child at home attended by a midwife at 4:20 p.m., February 13, 1987. Although the baby was breathing, he did not cry. The midwife ministered to him to no avail for a few minutes, cleaned him, wrapped him, and told the father to take him to a doctor. He first took the child to Southwest General Hospital. He testified by deposition that he was refused treatment there. He then drove to a building in the next block, remembering there was a "child doctor" there. His deposition testimony reflects he first went to an office across the hall from Gamboa's but was told that the doctor was not there. He went across the hall to Gamboa's office. He stated he told the woman there that his baby was "changing color," by which was meant bluish tones of the skin, and that the baby "needed help." The woman testified, however, he did not tell her this, rather, only that he wanted the baby "checked." She stated she did not know there was an emergency. The woman, a medical technician, went into the office and told the defendant, Gamboa, that the father wanted the baby checked.

Gamboa, in deposition testimony, indicated he did not know there was an emergency. He told the medical technician he would not see the baby and he instructed that the father be told to take the baby to Santa Rosa Hospital, where there are facilities especially for treating newborn babies. The father took the baby to Santa Rosa Children's Hospital, arriving about 6:40 p.m. The baby died five days later.

Dr. Gamboa testified he never talked with the father and never saw the child. He testified that he never treated the plaintiffs or their family, that he did not know, and had never met, the father. The following exchange occurred:

Q: Did you ever agree to see Mr. Salas as a doctor to treat or see Mr. Salas or his son?

A: No.

Q: Did you ever agree to see anyone in Mr. Salas's family as a doctor?

A: No. I don't know the gentleman ... I've never seen him.

The deposition testimony of the father reflects the following:

Q: You never talked to Dr. Gamboa, did you?

A: No, ma'am, not personally.

 *  *  *  *  *  *

Q: Has Dr. Gamboa ever seen you as a patient?

A: No, ma'am.

Q: Has he ever seen your son as a patient?

A: No, ma'am.

Q: And Dr. Gamboa never agreed to see your son as a patient?

A: No, ma'am.

Q: No doctor looked at your son until you reached the Santa Rosa Hospital, is that correct?

A: Correct.

Dr. Gamboa moved for summary judgment, alleging the failure of plaintiffs to show there was a physician/patient relationship existing between the father or the child upon which to predicate the action for medical malpractice.[1] Attached to the mo-

---

1. Article 4590i, § 1.03(a)(4) provides:

"Health care liability claim" means a cause of action against a health care provider or physi-

**840**

tion as summary judgment evidence was the affidavit of Gamboa, stating that at no time did he have a doctor/patient relationship with plaintiffs or their son, that he had never met them or agreed to treat them. He stated he had never billed them for medical services provided. Further he denied that his office was an emergency room and stated he did not advertise that the general public would be treated there for emergencies. While the affidavit of the father, which was attached to the response, stressed an emergency situation, it failed to controvert the lack of a physician/patient relationship.

TEX.R.CIV.P. 166a(c) provides that the motion for summary judgment shall state the specific grounds therefor. A defendant who moves for summary judgment has the burden of showing as a matter of law that no material issue of fact exists as to the plaintiff's cause of action. *Griffin v. Rowden,* 654 S.W.2d 435, 435–436 (Tex.1983). It must be shown he is entitled to judgment as a matter of law. *See Wilcox v. St. Mary's University of San Antonio,* 531 S.W.2d 589, 592–593 (Tex.1975). The summary judgment proof must establish as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

It is a well established principle of law that a physician is liable for malpractice or negligence only where there is a physician/patient relationship as a result of a contract, express or implied, that the doctor will treat the patient with proper professional skill, and there is a breach of professional duty to the patient. *Johnston v. Sibley,* 558 S.W.2d 135, 137 (Tex.Civ.App.— Tyler 1977, writ ref'd n.r.e.). *Pinckley v. Gallegos,* 740 S.W.2d 529, 531 (Tex.App.—

San Antonio 1987, writ den'd), iterated the necessary elements of medical malpractice as (1) a duty of the physician to act according to a certain standard; (2) breach of the applicable standard of care; (3) injury; and (4) casual connection between the breach of care and the harm. In *Hidalgo v. Surety Savings and Loan Association,* 462 S.W. 2d 540, 543 n. 1 (Tex.1971), the Supreme Court stated:

> We are not to be understood as holding that summary judgment may not be rendered, when authorized, on the pleadings, as, for example, ... when the plaintiff's petition fails to state a legal claim or cause of action. In such cases, summary judgment does not rest on proof supplied by pleading, sworn or unsworn, but on deficiencies in the opposing pleading. (Citations omitted)

It is the function of the court to determine whether evidence as to the facts makes an issue upon which the fact finder may reasonably find the existence or non-existence of such facts and whether such facts give rise to any legal duty on the part of the defendant. *See* RESTATEMENT (SECOND) OF TORTS § 328B (1965).

It is clear that before the question of standard of care is reached, the court must first determine as a question of law whether there is a legal duty on the defendant's part. In the present case the trial court would look to the pleadings and the summary judgment proof to determine the existence or the non-existence of the physician/patient relationship. The physician/patient relationship must exist before the legal duty on the part of Dr. Gamboa arises. Stated otherwise, the existence of the duty must flow from the relationship of patient-physician.

cian for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the *patient,* whether the *patient's* claim or cause of action sounds in tort or contract. (emphasis added)

Article 4590i, § 1.03(a)(6) provides:
"Medical care" means any act defined as practicing medicine in Article 4510 ... performed

or furnished, or which could have been performed, by one licensed to practice medicine in Texas for, to, or on behalf of a *patient* during the *patient's* care, treatment, or confinement. (emphasis added)
[The Act implicitly recognizes that the physician/patient relationship must exist before a cause of action may be claimed.]

A physician is under no legal obligation to practice his profession or render services to whomsoever may request them. *Childs v. Weis*, 440 S.W.2d 104, 107 (Tex. Civ.App.—Dallas 1969, no writ). A physician is not to be held liable for arbitrarily refusing to respond to a call of a person even urgently in need of medical or surgical assistance provided that the relation of physician and patient does not exist at the time the call is made or at the time the person presents himself for treatment. *Id.* *See* 61 Am.Jur.2d Physicians and Surgeons § 14, 158.

We overrule the five points of error challenging the granting of summary judgment in this case. We hold there is no evidence of a contract creating the physician/patient relationship. Instead, the evidence shows conclusively there existed no physician/patient relationship. Absent that relationship, there can be no duty. We hold that Gamboa sustained his burden of showing as a matter of law that one element of plaintiff's cause of action did not exist and, therefore, could not be proved. That essential element is duty.

The judgment is affirmed.