Opinion issued September 28, 2006

















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-04-00551-CV
  __________
 
THAO CHAU AND HA DIEN DO, INDIVIDUALLY AND AS NEXT
FRIEND OF THEIR MINOR CHILDREN, S.D. AND H.D., Appellants
 
V.
 
JEFFERSON RIDDLE, M.D. AND GREATER HOUSTON
ANESTHESIOLOGY, P.A., Appellees
 

 
 
On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2002-36481-A




O P I N I O N
          Thao Chau and Ha Dien Do, individually and as next friend of their minor
children, S.D. and H.D. (collectively referred to as “the Dos”), appeal the trial court’s
order granting Jefferson Riddle, M.D. and Greater Houston Anesthesiology, P.A.’s
(“GHA”) motion for summary judgment and dismissing the Dos’ claims against them. 
In five issues, the Dos argue that (1) the trial court erred in striking their expert’s
affidavit and their second supplemental designation of expert witnesses; (2) the trial
court erred in striking two paragraphs from another expert’s affidavit; (3) the trial
court erred in overruling their objections to the affidavits filed by two defense
experts; and (4) the trial court erred in granting Riddle and GHA’s motion for
summary judgment and dismissing the Dos’ claims. We affirm. 
Background
          On October 29, 2001, Dr. Jefferson Riddle was an on-call anesthesiologist at
Memorial Southwest Hospital. On this same day, Thao Chau, pregnant with twins, 
went into labor at Memorial Southwest and remained in labor until the morning of
October 30, 2001. Ms. Chau’s obstetrician, Dr. Le, decided to perform an emergency
cesarean section, and Dr. Riddle was called to provide anesthesia for Ms. Chau during
the surgery. After an unsuccessful attempt to use epidural anesthesia, Dr. Riddle
administered general anesthesia to Ms. Chau. 
          At 2:46 a.m. on October 30, 2001, S.D. was delivered “floppy,” without any
tone and very pale. The neonatal team took over S.D.’s care, but, after failing to
resuscitate him, Dr. Le asked Dr. Riddle to assist. Dr. Riddle proceeded to intubate
S.D. Afterwards, Dr. Riddle, using a stethoscope, listened and reported hearing
breath sounds in S.D.’s chest. He also reported seeing S.D.’s chest rise. At this time,
the neonatal team proceeded with the resuscitation, and Dr. Riddle returned to Ms.
Chau, who was experiencing bleeding from a uterine atony.


 
          S.D.’s endotracheal tube was secured by a nurse on the neonatal team. Two
members of S.D.’s neonatal team reported hearing breath sounds in S.D.’s chest,
although one other member reported not hearing breath sounds. The neonatal team
started chest compressions as S.D. remained unresponsive. Dr. Ruiz-Puyana, an on-call neonatologist, arrived in the operating room approximately 13 to 15 minutes after
S.D. was delivered and took over efforts to resuscitate him. Dr. Ruiz-Puyana reported
not hearing breath sounds and found that the intubation tube was lodged in S.D.’s
esophagus. Dr. Ruiz-Puyana extubated and re-intubated S.D., at which time his color
improved, but he still did not have a heart rate. Dr. Ruiz-Puyana then administered
medications and afterwards detected a heart rate. S.D. suffered permanent brain
damage due to a lack of oxygen. 
 

          On July 22, 2002, the Dos brought a healthcare liability suit against Dr. Riddle 
alleging medical malpractice in his care of S.D. The suit also named GHA, Riddle’s
employer, as being vicariously liable for the alleged negligence.


 
          The trial court granted Riddle and GHA’s motion to limit expert testimony to
one witness in each area of expertise. The Dos de-designated Dr. Scott Reeves and
left Dr. Ronald Katz as their testifying anesthesiology expert.
          Riddle and GHA moved for both traditional and no-evidence summary
judgments. The motion asserted that there was no evidence that Dr. Riddle was
negligent in his care of S.D. and, in the alternative, if there was a fact issue on this
claim, Dr. Riddle should prevail under a traditional summary judgment because he
proved his Good Samaritan affirmative defense.


 
          In response to the summary judgment motion, the Dos submitted two affidavits
from Dr. Reeves, their previously de-designated expert. Dr. Reeves testified that an
“on call” anesthesiologist expects emergencies, which include intubating newborns. 
Dr. Reeves further testified that Dr. Riddle cannot prevail on the Good Samaritan
defense because he became associated with Dr. Le when Le asked him to assist in the
ceasarian section; therefore, Dr. Riddle became S.D.’s physician while intubating
him. Also, despite what Dr. Riddle asserted in his affidavit, Dr. Reeves testified that
Dr. Riddle would be entitled to remuneration for S.D.’s intubation, which would also
fall outside the Good Samaritan statute. The Dos filed a second supplemental
designation of expert witnesses that re-designated Dr. Reeves as an additional
anesthesiology expert. 
          Dr. Riddle and GHA moved to strike Dr. Reeves’s affidavits as well as the
Dos’ second supplemental designation of expert witnesses. The Dos did not respond
to the motion, and it was granted. Dr. Riddle and GHA then filed a motion to strike
paragraphs six and nine of Dr. Katz’s affidavit for not being probative on the issue
of whether Dr. Riddle was entitled to receive remuneration for his services of S.D. 
Again, the Dos did not respond, and the trial court granted the motion. Finally, at a
hearing on the motion for summary judgment, the trial court granted summary
judgment to Dr. Riddle and GHA, and the case was dismissed with prejudice. 
                                                   Expert Testimony
          In issues one and two, the Dos argue that the trial court erred in striking their
second amended designation of expert witnesses, Dr. Reeves’s affidavits, and
paragraphs six and nine of Dr. Katz’s affidavit. In issues three and four, the Dos
contend that the trial court erred in overruling their objections to the affidavits filed
by two defense experts.
Designation of Expert Witnesses
          Exclusion of expert testimony is reviewed under an abuse of discretion
standard. McIntyre v. Ramirez, 109 S.W.3d 741, 749 (Tex. 2003). A trial court
abuses its discretion if it acts arbitrarily, unreasonably, or without reference to
guiding rules or principles. Powers v. Mem’l Hermann Hosp. Sys., 81 S.W.3d 463,
465 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). Under an abuse of
discretion standard, a reviewing court may not substitute its own judgment for that
of the trial court. Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002).           Unless otherwise ordered by the court, a party must designate experts within
a specified time frame. See Tex. R. Civ. P. 195.2. A party has a duty to amend or
supplement responses to discovery when the party learns that the discovery was
incomplete or incorrect. See Tex. R. Civ. P. 193.5. Testimony not disclosed in
response to discovery is permitted upon a showing of good cause or if its use would
not unfairly surprise or prejudice the other party. Tex. R. Civ. P. 193.6. Exclusion
of a witness for a party’s failure to timely or properly designate a witness is a sanction
available to the trial court. Tex. R. Civ. P. 193.6. 
          Here, the modified docket control order indicated that only one expert per
specialty could be designated. Accordingly, the Dos designated Dr. Ronald Katz as
their testifying anesthesiology expert. In their second supplemental designation of
expert witnesses, the Dos re-designated Dr. Reeves without de-designating Dr. Katz. 
The Dos filed no response to Dr. Reeves and GHA’s motion to strike; therefore, we
hold that the trial court acted within its discretion when it struck Dr. Reeves as a
sanction for the Dos’ failure to timely or properly designate him. See id.
Summary Judgment Evidence
          In addition to striking their expert designation, the trial court struck Dr.
Reeves’s affidavits and two paragraphs in Dr. Katz’s affidavit that were filed in
response to Dr. Riddle’s and GHA’s motion for summary judgment.
          To obtain reversal of a judgment based on error in the admission or exclusion
of evidence, an appellant must show that the trial court’s ruling was in error and that
the error was calculated to cause and probably did cause rendition of an improper
judgment. Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989). The
summary judgment rule provides that summary judgment proof must contain facts
that would be admissible in evidence. United Blood Servs. v. Longoria, 938 S.W.2d
29, 30 (Tex. 1997); see also Tex. R. Civ. P. 166a(f). To prove facts through an
interested witness, the testimony must be uncontroverted, clear, positive, direct,
credible, free from contradiction, and susceptible to being readily controverted. 
McIntyre, 109 S.W.3d at 749.
          Dr. Reeves’s Affidavits
          Dr. Riddle and GHA filed an objection to and a motion to strike the Dos’
summary judgment evidence. Specifically, they sought to strike Dr. Reeves’s two
affidavits—Exhibit A, dated September 15, 2003, and Exhibit G, dated January 15,
2003. The objection was that neither affidavit would be admissible at trial in this
case. See Tex. R. Civ. P. 166a(f); United Blood Servs., 938 S.W.2d at 30. They
further objected that neither affidavit was adequate summary judgment evidence on
causation. The Dos did not respond to the motion. 
          When the Dos filed their summary judgment response, Dr. Reeves was not their
designated expert. The affidavit of an expert who is not properly designated may not
be used as evidence in a summary judgment context. Cunningham v. Columbia/St.
David’s Healthcare, 185 S.W.3d 7, 10–11 (Tex. App.—Austin, no pet.); Ersek v.
Davis & Davis, P.C., 69 S.W.3d 268, 274 (Tex. App.—Austin 2002, pet. denied). 
Where the expert’s testimony will be excluded at trial on the merits, it will be
excluded from a summary judgment proceeding. Ersek, 69 S.W.3d at 273. The
affidavits were inadmissible as summary judgment proof per rule 166a(f)


 of the
Texas Rules of Civil Procedure. Tex. R. Civ. P. 166a(f); see also Ersek, 69 S.W.3d
at 271. 
          Accordingly, because Dr. Reeves was not properly designated, because we
have already held that the trial court did not abuse its discretion in striking the Dos’
second supplemental designation in which they re-designated Dr. Reeves, and
because Dr. Reeves would be unable to testify during the trial on the merits, we hold
that the trial court did not abuse its discretion in striking Dr. Reeves’s affidavits filed
in response to Dr. Riddle and GHA’s motion for summary judgment.



          We overrule issue one.
          Dr. Katz’s Affidavit
          In issue two, the Dos contend that the trial court erred in striking paragraphs
six and nine of Dr. Katz’s affidavit. 
 

          In seeking the protection of the Good Samaritan statute, Dr. Riddle testified
that he was not entitled to receive payment for the services provided to S.D. He 
asserted that neither he nor anyone he was familiar with in Harris County would have
been entitled to remuneration “under these circumstances.” In response, the Dos
offered the affidavit of Dr. Katz, a board-certified anesthesiologist from California,
to support their contention that Dr. Riddle was entitled to compensation. Dr. Riddle
and GHA moved to have paragraphs six and nine struck from Dr. Katz’s affidavit for
not being probative on the issue of whether Dr. Riddle was entitled to remuneration
for the intubation of S.D. because they were conclusory and Dr. Katz was not
qualified to opine about the billing practices of a Houston-based anesthesiologist. 
          The paragraphs that were struck stated the following: 
          6. Anesthesiologists are hospital–based doctors, meaning we
rarely have offices where we see patients, and usually our medical
practice is at a hospital. When we render anesthesia services, we expect
to be compensated, whether we perform those services “on call” or
during the regular workday; it is our practice to charge (or for the
hospital to charge if we are salaried and at a teaching facility) for those
services. 
 
. . . .
 
          9. From the time that Dr. Riddle began providing the anesthesia
for the cesarean section in this case, he became “associated with” the
attending physician, Dr. Le. He became Dr. Le’s partner, associate or
colleague on the Labor and Delivery team, and they had to work
together for all the patients involved in the birth—the mother and the
children. Both obstetrician and anesthesiologist in a C-section are
treating both the mother and the child because whatever they do to the
mother is also being done to and affects the child who is in that mother’s
body, whether by administering drugs, providing oxygen, and the like. 
It is their job to care for both the mother and the child/children. So it is
disingenuous for an anesthesiologist during a C-section to say he had no
responsibility for the child, especially under the circumstances where
there was no neonatologist present, the baby was in distress, he had
undertaken to intubate the child, and his adult patient (the mother) was
not in crisis. It is below the standard of care for an anesthesiologist
providing anesthesia during a C-section to care for only the mother and
not the child as well where the mother is medically stable. Caring for
both is a juggling act the anesthesiologist must manage within the
standards of care. 
 
          [S.D.] was and would have been Dr. Riddle’s responsibility in any
event, as the “on call” anesthesiologist. If the mother had delivered
without C-section, and the baby was not breathing, in the absence of a
neonatologist, as the “on call” anesthesiologist, Dr. Riddle would likely
have been called in specifically for the baby who didn’t have an
established airway as the “on call” anesthesiologist. 
 
          Anesthesiologists routinely perform intubations for general
anesthesia, and are often called to perform intubations or assist in
difficult intubations, in an operating room or otherwise, because they are
usually the most qualified to do so by experience and training. In these
situations, anesthesiologists (or the hospital if they are in a teaching
hospital and the anesthesiologists are salaried) commonly charge and are
entitled to charge for these services. The intubation of [S.D.] is no
different from the intubation of other patients in which anesthesiologists
commonly charge and are entitled to charge for their services. 

          “The relevant standard for an expert’s affidavit opposing a motion for summary
judgment is whether it presents some probative evidence of the facts at issue.” 
Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 122 (Tex. 1996). A conclusory
statement of an expert witness is insufficient to create a question of fact to defeat
summary judgment. McIntyre, 109 S.W.3d at 749. A party offering an expert’s
affidavit must demonstrate that the witness “possesses special knowledge as to the
very matter on which he proposes to give an opinion.” Gammill v. Jack Williams
Chevrolet, Inc., 972 S.W.2d 713, 718 (Tex. 1998).
          Paragraph six of Dr. Katz’s affidavit states, in pertinent part, that, when an
anesthesiologist renders anesthesia services, whether on call or during the regular
workday, “it is our practice to charge for those services.” The testimony in paragraph
nine states that Dr. Riddle became responsible for S.D. when he assumed the care of
Mrs. Chau. As such, he was entitled to compensation for intubating S.D. after birth. 
          While Dr. Katz purported to have personal knowledge of the facts recited in his
affidavit, his statement regarding Dr. Riddle’s entitlement to compensation is a legal
conclusion with no supporting facts or rationale. See McIntyre, 109 S.W.3d at 749
(holding that Maryland doctor not qualified to testify about “what’s ordinarily billed
or what the law ordinarily allows people to recover for their medical services in the
State of Texas”). Dr. Katz’s affidavit makes no claims that, within this particular
locale, an anesthesiologist acting within the circumstances of these facts would have
been entitled to compensation. See id. A conclusory statement of an expert is
insufficient to create a question of fact to defeat a summary judgment. Id. 
Consequently, this testimony is not probative of the issue at hand, and, as such, the
trial court did not abuse its discretion in striking it.  
          We overrule issue two.
          Dr. Riddle’s Affidavit
          In issue three, the Dos contend that the trial court erred in overruling their
objections to Dr. Riddle’s affidavit offered in support of his contention that he was
not entitled to remuneration for intubating S.D. 
          The Dos objected to paragraph six of Dr. Riddle’s affidavit where he stated that
he “was only entitled to bill for and only did bill for the anesthesia services I provided
to my patient, Thao Chau,” and that he was “not entitled to charge for the intubation
of [S.D.]” and was “only entitled to charge for the services directly related to the
patient’s care and treatment.” The paragraphs in question stated as follows:
I was only entitled to bill for and only did bill for the anesthesia services
I provided to my patient, Thao Chau. I would not ordinarily receive or
ordinarily be entitled to receive remuneration under the above described
circumstances for the emergency intubation of [S.D.] Neither myself
nor anyone else that I am familiar with in Harris County would have
charged a fee for the emergency intubation of [S.D.] or to any other
person under the circumstances of this case. I did not charge for the
intubation of [S.D.], I was not entitled to charge for the intubation of
[S.D.], and I did not render the intubation related care to [S.D.] in
expectation of compensation. This is not a situation for which I have
ever or would ever charge for.

 
As the only anesthesiologist administering anesthesia to Ms. Chau
during her cesarean section, I am only entitled to charge for the services
directly related to that patient’s care and treatment.

In their objection to the summary judgment evidence, the Dos asserted that (1) Dr.
Riddle is not an attorney and, pursuant to Texas Rule of Evidence 702, is not
qualified to comment on what he is “entitled to”; (2) his statement was conclusory;
(3) he cannot testify as a lay witness under rule 701 because he has not demonstrated
“what rational basis leads him to that conclusion”; and (4) the statement “under the
circumstances of this case” is “deceptively vague.” 
          In McIntyre, the Texas Supreme Court held that “proof that Dr. McIntyre is not
legally entitled to remuneration under any conceivable circumstance or theory is
unnecessary.” McIntyre, 109 S.W.3d at 746 (emphasis added). A person seeking
protection of the Good Samaritan statute must prove that he would neither ordinarily
receive nor ordinarily be entitled to receive remuneration. Id. at 747. If a person
presents evidence that he does not customarily receive payment under the
circumstances in question, he can negate the first prong of section 74.001(d). Id. at
746.  
          Unlike Dr. Katz’s legal conclusion regarding billing practices, Dr. Riddle’s
affidavit provides “supporting facts or rationale” for his statement that he does not
ordinarily receive payment for and is not entitled to bill for S.D.’s intubation. See id.
at 749. Furthermore, because McIntyre only requires that Dr. Riddle prove that he
does not customarily receive payment under the circumstances in question, the Dos
cannot prove that the alleged error was calculated to cause and probably did cause,
rendition of an improper judgment. See Gee, 765 S.W.2d at 396. Finally, the Dos’
complaints regarding Dr. Riddle’s use of the term “under the circumstances of this
case” are unfounded considering that the Good Samaritan statute uses the term “under
such circumstances” and the McIntyre case refers to “under the circumstances in
question.” See Tex. Civ. Prac. & Rem. Code Ann. § 74.001(d); McIntyre, 109
S.W.3d at 746. 
          Accordingly, we overrule issue three.
          Marie Walton’s Affidavit
          In issue four, the Dos contend that the trial court erred in overruling their
objections to Marie Walton’s affidavit where she testified that, as the director of
operations for Preferred Healthcare Business Services—the company that provided
billing services for Dr. Riddle and GHA—she knew that Dr. Riddle could only charge
for the anesthesia he administered to his patient, Thao Chau.  
          The Dos objected to Walton’s affidavit for containing “several self-serving
conclusory statements . . . about ‘GHA’s billing guidelines’ and ‘applicable
guidelines.’ However, none of those guidelines have been proved up as a business
record, attached or even described, if indeed they exist.” They objected to the “rank
hearsay,” and conclusory, self-serving affidavit. The paragraphs in question stated
as follows:
The charge for anesthesia services provided to Thao Chau on October
30, 2001 was $734.50. Dr. Riddle charged only for the anesthesia
services he provided to Thao Chau on October 20, 2001.
 
Pursuant to GHA’s billing guidelines, Dr. Riddle was the primary
anesthesiologist providing anesthesia services to Thao Chau and may
only charge for the anesthesia services he provided to Thao Chao. [sic]
 
Pursuant to such guidelines, Dr. Riddle did not submit a bill for the
intubation of [S.D.] He would not be able to bill for the intubation of
[S.D.] I am not familiar with anyone in Harris County who would send
a bill for providing emergency care for [S.D.] under the circumstances
of this case. An anesthesiologist would not ordinarily receive or
ordinarily be entitled to receive payment under the circumstances in
which the emergency care was provided to [S.D.] 
 
Pursuant to the applicable billing guidelines, Dr. Riddle would not be
entitled to payment for a procedure that was not related to his patient,
Thao Chau, on October 30, 2001.

The Dos complain that (1) Walton is not an attorney and therefore not qualified to
comment, as an expert, on what Dr. Riddle is entitled to charge; (2) she cannot
comment, as a lay witness, because she “has not demonstrated to us what rational
basis leads her to that conclusion”; and (3) the term “the circumstances of this case”
is “deceptively vague.” 
 
           Walton testified that she has personal knowledge of the facts of this case and,
as such, she can certainly testify to what Dr. Riddle’s ordinary billing practices are. 
Furthermore, as we held above, McIntyre only requires that Dr. Riddle prove that he
does not customarily receive payment under the circumstances in question. Thus, the
Dos cannot prove that the alleged error regarding Walton’s testimony regarding
“entitlement” was calculated to cause, and probably did cause, rendition of an
improper judgment. See Gee, 765 S.W.2d at 396. Finally, the Dos’ complaints
regarding Walton’s use of the term “the circumstances of this case” are unfounded
considering that the Good Samaritan statute uses the term “under such circumstances”
and the McIntyre case refers to “under the circumstances in question.” See Tex. Civ. 
Prac. & Rem. Code Ann. § 74.001(d); McIntyre, 109 S.W.3d at 746. 
          We overrule issue four.
Summary Judgment
          In issue five, the Dos contend that the trial court erred in granting the motion
for summary judgment and dismissing their claims. Dr. Riddle and GHA’s summary
judgment consisted of (1) a traditional summary judgment in which they asserted that
the Good Samaritan affirmative defense precluded recovery and (2) a no-evidence
summary judgment in which they asserted that there was no evidence that Dr. Riddle
had a duty to care for S.D., there was no evidence of a breach of the alleged duty, and
there was no evidence that the breach of the alleged duty caused S.D.’s injuries.
Good Samaritan
          In a traditional summary judgment, the movant bears the burden of proof. Tex.
R. Civ. P. 166a(c); Roskey v. Tex. Health Facilities Comm’n, 639 S.W.2d 302, 303
(Tex. 1982). All doubts concerning the existence of a genuine issue of fact must be
resolved against the movant. Montgomery v. Kennedy, 669 S.W.2d 309, 311 (Tex.
1984). Once the movant proves a right to a summary judgment, the burden shifts to
the nonmovant to present evidence creating genuine issues of material fact. Phon Son
Van v. Pena, 990 S.W.2d 751, 753 (Tex. 1999). A defendant moving for summary
judgment on an affirmative defense has the burden to establish conclusively that
defense. McIntyre, 109 S.W.3d at 748.
          Under certain circumstances, the Good Samaritan statute exempts a person who
responds to a medical emergency from liability for ordinary negligence. The statute
provides in relevant part:
          Liability for Emergency Care
          (a)     A person who in good faith administers emergency care .
. . is not liable in civil damages for an act performed during
the emergency unless the act is wilfully or wantonly
negligent. 
 
          (b)     This section does not apply to care administered:
 
                    (1)     for or in expectation of remuneration; or
 
                    (2)by a person who was at the scene of the emergency
because he or a person he represents as an agent was
soliciting business or seeking to perform a service
for remuneration.
 
          (c)     If the scene of an emergency is in a hospital or other health
care facility or means of medical transport, a person who in
good faith administers emergency care is not liable in civil
damages for an act performed during the emergency unless
the act is wilfully or wantonly negligent, provided that this
subsection does not apply to care administered:
 
                    (1)by a person who regularly administers care in a
hospital emergency room unless such a person is at
the scene of the emergency for reasons wholly
unrelated to the person’s work in administering
health care; or
 
                    (2)by an admitting or attending physician of the patient
or a treating physician associated by the admitting or
attending physician of the patient in question. 
 
          (d)     For purposes of Subsections (b)(1) and (c)(1), a person
who would ordinarily receive or be entitled to receive a
salary fee, or other remuneration for administering care
under such circumstances to the patient in question shall be
deemed to be acting for or in expectation of remuneration
even if the person waives or elects not to charge or receive
remuneration on the occasion in question. 
 
          (e)     This section does not apply to a person whose negligent act
or omission was a producing cause of the emergency for
which care is being administered. 

Tex. Civ. Prac. & Rem. Code Ann. § 74.001.

          The Good Samaritan statute has separate provisions to apply depending on the
physical location at which the emergency care was rendered. See id. § 74.001(a), (c). 
Here, the scene of the emergency was a labor and delivery room in a hospital. 
Accordingly, this case implicates section 74.001(c), which applies when the scene of
the emergency is a hospital. See id. § 74.001(c). Dr. Riddle testified that he acted in
good faith and without wilful or wanton negligence, and the Dos did not present any
contraverting evidence on this issue; therefore, Dr. Riddle is exempt from liability
under section 74.001(c), unless he is excepted by some other provision of the statute.
          Pre-existing Relationship or Duty
          The purpose of the Good Samaritan statute is to protect persons who respond
to an emergency absent a pre-existing relationship or duty to respond. See McIntyre,
109 S.W.3d at 747–78. While consent may be implied, the “on call” status of a
physician does not automatically impose a duty. St. John v. Pope, 901 S.W.2d 420,
424 (Tex. 1995). 
          The Dos contend that the duty of an anesthesiologist to a patient in the process
of giving birth also extends to the unborn child. They offer the affidavit of Dr. Katz,
which states that “it is foreseeable that an anesthesiologist may have to intubate a
newborn when called to assist in a cesarean section,” and that, “from time to time,”
an anesthesiologist is needed to intubate the newborn if he can do so because the
mother is stable. In his deposition, Dr. Katz testified that, if Dr. Riddle found that
he could not leave his patient to assist with the intubation, then he had no
responsibility to the child. The Dos contend that Dr. Riddle owed a duty to S.D., and,
as such, is precluded from seeking exemption from liability under the Good
Samaritan statute.
          Dr. Katz testified that Dr. Riddle could have chosen not to intubate S.D. In his
affidavit, he testified that 
Dr. Riddle was [S.D.’s] treating physician while intubating [S.D.] He
could have refused to intubate him if the anesthetized mother was in
crisis or medically unstable and he had to choose her. However, once
he agreed to intubate [S.D.], laid hands on him, and undertook to
intubate [S.D.], Dr. Riddle became one of [S.D.’s] physicians. It was
Dr. Riddle’s responsibility to perform that intubation within the standard
of reasonably prudent anesthesia care. 

(Emphasis added.) These statements do not establish a pre-existing relationship or
impart an affirmative duty on the part of Dr. Riddle to act. Rather, they seem to
merely give instances when the assistance of an anesthesiologist may be sought to
resolve an emergency situation and suggest that any assistance on the
anesthesiologist’s part is discretionary. As such, the Dos failed to establish a pre-existing relationship or an affirmative duty on the part of Dr. Riddle to act on behalf
of S.D.
 
          Emergency
          The Dos contend that a lack of oxygen in a newborn may be a medical
emergency, however, because the anesthesiologist can expect that this might happen
and is trained to handle such a situation, then it is not a medical emergency for the
purposes of the Good Samaritan statute. Just because an anesthesiologist has trained
to respond to such emergencies does not make them any less of an emergency. 
          The Good Samaritan statute serves to shield from liability a person who acts
without a pre-existing duty. See Tex. Civ. Prac. & Rem. Code Ann. § 74.001; see
also McIntyre, 109 S.W.3d at 747. Even Dr. Katz acknowledged that a “patient who
is not getting oxygen, or is getting little oxygen, is always an emergency.” Having
already held that Dr. Riddle did not have a pre-existing relationship with S.D., we
hold that S.D.’s status at birth created an emergency for Dr. Riddle within the Good
Samaritan statute.
          Expectation of Remuneration 
          The protection of the Good Samaritan statute is only available if the one
rendering emergency care proves that he would not ordinarily receive or ordinarily
be entitled to receive remuneration for such care. McIntyre, 109 S.W.3d at 747. The
Dos asserted that Dr. Riddle was entitled to remuneration for S.D.’s intubation.
          In his affidavit, Dr. Riddle stated the following: 
I am not a physician who regularly administers care in the emergency
room at Memorial Southwest Hospital or any other hospital. I was not
an attending or admitting physician of Thao Chau. I was not an
attending or admitting physician of [S.D.]. I was not a treating physician
associated with Dr. Le. . . . I was not a treating physician associated
with Dr. Ruiz-Puyana. 
 
I was only entitled to bill for and only did bill for the anesthesia services
I provided to my patient, Thao Chau. I would not ordinarily receive or
ordinarily be entitled to receive remuneration under the above described
circumstances for the emergency intubation of [S.D.]. Neither myself
nor anyone else that I am familiar with in Harris County would have
charged a fee for the emergency intubation of [S.D.] or to any other
person under the circumstances of this case. I did not charge for the
intubation of [S.D.], I was not entitled to charge for the intubation of
[S.D.], and I did not render the intubation related care to [S.D.] in
expectation of compensation. This is not a situation for which I have
ever or would ever charge for. 

To prove facts through an interested witness, the testimony must be uncontroverted,
clear, positive, direct, credible, free from contradiction, and susceptible to being
readily controverted. Tex. R. Civ. P. 166a(c); McIntyre, 109 S.W.3d at 749. The
Dos objected to Dr. Riddle’s affidavit. The trial court, however, allowed the affidavit
as well as the affidavit of billing specialist, Marie Walton, offered in support of
Riddle’s proposition that he was not entitled to remuneration. Having already held
that the trial court did not abuse its discretion in striking the Dos’ summary judgment
evidence on this issue, we hold that Dr. Riddle’s summary judgment evidence
conclusively established that he did not act for or in expectation of remuneration
within the meaning of section 74.001(b)(1) and (d) of the Texas Civil Practice and
Remedies Code. 
          Association            
          The Good Samaritan statute does not shield a treating physician associated by
the admitting or attending physician of the patient in question from ordinary
negligence during emergency care rendered to that patient in a hospital. Tex. Civ.
Prac. & Rem. Code Ann. § 74.001(c)(2). The Dos claim that, because Dr. Riddle
was working with Dr. Le, Ms. Chau’s obstetrician, he became “associated” within the
meaning of section 74.001(c)(2) of the Good Samaritan statue. The patient in
question is S.D. Dr. Le testified that he was the attending physician for Ms. Chau,
but Dr. Ruiz-Puyana, the neonatologist, was the attending physician for S.D. Dr.
Katz’s affidavit makes no contention that Dr. Riddle was, in any way, associated with
Dr. Ruiz-Puyana. As such, we hold that Dr. Riddle was not associated with S.D.’s
attending physician within the meaning of the Good Samaritan statute.
          We hold that Dr. Riddle and GHA conclusively established that Dr. Riddle is
not excepted by any provision of the statute and is therefore entitled to the Good
Samaritan affirmative defense.   Having held that Dr. Riddle and GHA conclusively
established their Good Samaritan affirmative defense, we need not evaluate their
traditional and no-evidence summary judgment motions on negligence. 
          We overrule issue five.
                                                         Conclusion
          We affirm the order of the trial court granting summary judgment and
dismissing the Dos’ claims.
 
                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Nuchia, Keyes, and Hanks.

Justice Keyes, dissenting.