COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



HILARIO B. ORTIZ,


 Appellant,


v.


STEPHEN PHILIP GLUSMAN, M.D.,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-08-00345-CV



Appeal from the


210th District Court


of El Paso County, Texas


(TC# 2008-4923)


O P I N I O N


 Appellant, Hilario Ortiz, appeals the trial court's summary judgment granted in favor of
Appellee, Dr. Stephen Glusman, stemming from the former's medical malpractice suit for
negligence. In two issues on appeal, Ortiz challenges the trial court's exclusion of evidence and
contends that summary judgment in favor of Dr. Glusman was improper. We affirm.

BACKGROUND


 On May 9, 2003, Ortiz was admitted to Del Sol Medical Center after complaining of fever,
chills, sweats, and low back pain. Dr. Oswaldo Cajas was Ortiz's attending physician while at Del
Sol. The following day, Ortiz developed abnormal neurological symptoms including numbness and
weakness in his lower extremities, and urinary incontinence. Accordingly, Dr. Cajas ordered a
neurological consultation with Dr. Glusman, and Del Sol staff contacted Dr. Glusman's answering
service.

 Although not on-call that day, Dr. Glusman returned the call in the afternoon and spoke to
Nurse Vivian Atchinson. (1) Dr. Glusman informed the nurse that he was unavailable to see any
patients that day. Thus, Dr. Glusman refused the consultation for that day, but stated that he would
see the patient the following day, if Dr. Cajas believed that was appropriate. Dr. Cajas did not
believe that Ortiz's condition was an emergency, but rather ordered the consultation on a routine,
non-stat basis.

 In the early morning hours on May 11, 2003, Ortiz's condition worsened. At 6 a.m., Dr.
Suresh Antony, an infectious disease specialist, found paralysis and recommended that Ortiz be
transferred to Las Palmas Medical Center. By the time Dr. Glusman arrived at Del Sol Medical
Center, Ortiz had already been transferred to the other hospital.

 Now suffering from a permanent spinal cord injury, Ortiz sued Dr. Glusman for negligence,
alleging that Dr. Glusman knew or should have known that his neurological dysfunction required
evaluation on May 10, 2003, and that Dr. Glusman was negligent in failing to timely evaluate Oritz
that day. Subsequently, Dr. Glusman moved for summary judgment on traditional and no-evidence
grounds. Ortiz, relying on Nurse Segura's deposition, responded that there was a question of fact
as to whether a physician-patient relationship existed when Dr. Glusman allegedly spoke to Nurse
Segura. Dr. Glusman objected to Nurse Segura's deposition, claiming that her testimony was
irrelevant, speculative, and conclusory. After reviewing the pleadings, motions, and attachments,
the trial court excluded Nurse Segura's testimony and granted summary judgment in favor of Dr.
Glusman.

EVIDENTIARY RULINGS

 In Issue One, Ortiz asserts that the trial court abused its discretion by excluding Nurse
Segura's testimony on grounds of speculation. According to Ortiz, Nurse Segura's testimony was
not speculative, but relevant and admissible under Rule 406. We disagree.

Standard of Review

 The standard of review for the admissibility of evidence in a summary-judgment proceeding
is the same as that at a regular trial. United Blood Servs. v. Longoria, 938 S.W.2d 29, 30 (Tex.
1997). That is, we review the trial court's ruling for an abuse of discretion. Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion when
it acts without reference to guiding rules or principles. Id.

Speculation

 We first address whether the trial court could find Nurse Segura's testimony speculative. 
Testimony based solely on conjecture and speculation is incompetent and cannot support a judgment. 
General Motors Corp. v. Iracheta, 161 S.W.3d 462, 470-71 (Tex. 2005). Indeed, "[s]tatements of
subjective belief are no more than conclusions and are not competent summary judgment evidence." 
Krishnan v. Law Offices of Preston Henrichson, P.C., 83 S.W.3d 295, 299 (Tex. App. - Corpus
Christi 2002, pet. denied) (citing Tex. Division-Tranter, Inc. v. Carrozza, 876 S.W.2d 312, 314 (Tex.
1994)).

 Here, Nurse Segura's deposition testimony was clear: she did not remember attending to
Ortiz, nor could she ever recall speaking to Dr. Glusman about a consult for Ortiz. Nothing in the
summary-judgment record reflects that Nurse Atchinson, who always takes the consult calls, did not
speak to Dr. Glusman, and Dr. Glusman testified that he spoke to Nurse Atchinson about the consult,
not Nurse Segura. Because the record does not reflect that Nurse Segura spoke to Dr. Glusman, her
testimony as to what might have occurred had she spoken to Dr. Glusman was mere conjecture and
speculation. See Bartosh v. Gulf Health Care Center-Galveston, 178 S.W.3d 434, 442-43 (Tex.
App. - Houston [14th Dist.] 2005, no pet.); Nelson v. Regions Mort., Inc., 170 S.W.3d 858, 865
(Tex. App. - Dallas 2005, no pet.).

 Nevertheless, Ortiz attempts to rely on a hypothetical posed to Nurse Segura in which he
posited that if Nurse Atchinson did not speak to Dr. Glusman, Nurse Segura must have as she was
the only other possible nurse available to participate in the phone call with Dr. Glusman. However,
a trial court does not abuse its discretion in excluding testimony based on an hypothetical that calls
for speculation on the part of the witness. See Trahan v. Lone Star Title Co. of El Paso, Inc., 247
S.W.3d 269, 284 (Tex. App. - El Paso 2007, pet. denied); Nelson v. Regions Mort., Inc., 170 S.W.3d
858, 864 (Tex. App. - Dallas 2005, no pet.). Because Nurse Segura's testimony that she spoke to
Dr. Glusman about the consult was speculative, we discern no abuse of discretion in the trial court's
exclusion of her testimony.

Rule 406

 We now turn to whether the trial court could have found Nurse Segura's testimony relevant
and therefore admissible under Rule 406. That rule provides that evidence of a person's habit or
routine practice is relevant to prove that the person acted in conformity therewith on the occasion
in question. Tex. R. Evid. 406. To be admissible, the habit evidence must be "a regular response
to a repeated specific situation." Oakwood Mobile Homes, Inc. v. Cabler, 73 S.W.3d 363, 375 (Tex.
App. - El Paso 2002, pet. denied). In other words, his response must be the same specific one to the
same set of facts. Waldon v. City of Longview, 855 S.W.2d 875, 879-80 (Tex. App. - Tyler 1993,
no writ). One to two examples is insufficient to demonstrate a habit. Felix v. Gonzalez, 87 S.W.3d
574, 579 (Tex. App. - San Antonio 2002, pet. denied); McClure v. Landis, 959 S.W.2d 679, 681
(Tex. App. - Austin 1997, writ denied).

 The record reflects that Dr. Glusman began practicing in El Paso on May 1, 2003, and Ortiz's
consult was requested on May 10, 2003. Dr. Glusman was on call at the hospital only four times
during that ten-day period. Although Nurse Segura testified that she interacted with Dr. Glusman
before May 10, 2003, she did not state what those interactions entailed, how often they occurred, or
whether they consisted of consultations. Such testimony alone certainly does not establish the
predicate for the admissibility of evidence of Dr. Glusman's habit or routine practice under Rule 406. 
See McClure, 959 S.W.2d at 681; Johnson v. City of Houston, 928 S.W.2d 251, 254 (Tex. App. -
Houston [14th Dist.] 1996, no writ). Moreover, to the extent that the testimony invoked Dr.
Glusman's habit or routine practice in participating in consultations after the incident, that testimony
would not suffice to establish Dr. Glusman's conduct on the day of the incident as Dr. Glusman
testified that he changed the way he communicates with nurses concerning consultations after the
incident occurred. See Cabler, 73 S.W.3d at 375 (requiring habit evidence to be "a regular response
to a repeated specific situation"). Accordingly, Nurse Segura's testimony does not meet the
requisites of Rule 406.

 Finding no abuse of discretion in the trial court's exclusion of Nurse Segura's testimony we
overrule Issue One.

SUMMARY JUDGMENT

 In Issue Two, Ortiz contends that the trial court erred by granting summary judgment in favor
of Dr. Glusman. According to Ortiz, he submitted sufficient evidence to raise a genuine issue of
material fact, and Dr. Glusman failed to conclusively establish, as a matter of law, that no physician-patient relationship existed. Again, we disagree.

Standard of Review

 We review summary judgments de novo. Valence Operating Co. v. Dorsett, 164 S.W.3d 656,
661 (Tex. 2005). A summary judgment is proper only when a movant establishes that there is no
genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.
R. Civ. P. 166a(c). In reviewing a summary judgment, we indulge every reasonable inference in
favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts
in favor of the nonmovant. Valence Operating Co., 164 S.W.3d at 661.Applicable Law

 A cause of action for negligence has three elements: (1) a legal duty; (2) a breach of that
duty; and (3) damages proximately resulting from the breach. Praesel v. Johnson, 967 S.W.2d 391,
394 (Tex. 1998). The threshold question, of course, is the existence of a duty. Id. If no duty exists,
our inquiry into whether negligence liability may be imposed ends. Van Horn v. Chambers, 970
S.W.2d 542, 544 (Tex. 1998).

 In medical-malpractice cases, a physician-patient relationship is a prerequisite to the
existence of any duty. St. John v. Pope, 901 S.W.2d 420, 423 (Tex. 1995) (on-call physician
consulted by emergency room physician by phone did not form physician-patient relationship and
therefore owed no duty to patient); Thapar v. Zezulka, 994 S.W.2d 635, 637-38 (Tex. 1999) (absence
of doctor-patient relationship precluded victim's wife from maintaining medical negligence claims
against psychiatrist based on treatment and diagnosis of patient who killed victim). To establish
such a relationship, the physician need not have direct physical contact with the patient. St. John,
901 S.W.2d at 424. Indeed, a physician-patient relationship may be established at the express or
implied consent of the physician. Id. at 423. However, merely being "on call" does not
automatically create a physician-patient relationship, nor does it impose a duty. Id. at 424. When
there is no prior relationship between the physician and the patient, there must be some affirmative
action on the part of the physician to treat the patient to create such a relationship. Majzoub v.
Appling, 95 S.W.3d 432, 436 (Tex. App. - Houston [1st Dist.] 2002, pet. denied); Day v. Harkins
& Munoz, 961 S.W.2d 278, 280 (Tex. App. - Houston [1st Dist.] 1997, no writ).

Application

 The record reflects that Dr. Glusman was not on-call on May 10, 2003. He told the nurse that
he spoke to that he was not on call, that he was unavailable for a consult, and that he would see the
patient the next day. In his deposition, Dr. Glusman expressly testified that he refused the
consultation for May 10, 2003. Neither the nurse to whom he spoke, nor Dr. Cajas, the treating
physician, indicated that Ortiz's condition was an emergency or that Dr. Glusman needed to see Ortiz
on May 10, 2003. Rather, it was simply a routine consultation. This evidence does not demonstrate
that a physician-patient relationship was created.

 Moreover, although Dr. Glusman may have received some information about Ortiz's
condition over the phone, it was not detailed information, and Dr. Glusman gave no diagnosis, nor
did he give any orders to the nursing staff or tell them what action to take for the patient. He told
the nurse that if Ortiz needed to be seen, then another neurologist needed to be called. Dr. Glusman
also emphasized that it was Dr. Cajas' decision as to whether Ortiz needed to be seen on May 10,
2003, and Dr. Cajas testified that Ortiz could wait until the next day. See St. John, 901 S.W.2d at
424; Majzoub, 95 S.W.3d at 438.

 And even if he had accepted the consult, Dr. Glusman did not see Ortiz until the following
day, which was within the 24-hour window as provided by the hospital bylaws upon accepting the
consultation. Thus, there was no contractual obligation created simply by accepting the consult. 
Furthermore, simply accepting a consult for a future evaluation, as here, does not create a physician-patient relationship at the time the consult is accepted when there is no affirmative act of treatment. 
See Jackson v. Isaac, 76 S.W.3d 177, 184 (Tex. App. - Eastland 2002, pet. denied); Ortiz v. Shah,
905 S.W.2d 609, 611-12 (Tex. App. - Houston [14th Dist.] 1995, writ denied).

 Ortiz relies on Lection v. Dyll, 65 S.W.3d 696 (Tex. App. - Dallas 2001, pet. denied) to argue
that a physician-patient relationship was created in this case. We find Lection distinguishable. In
Lection, an emergency room doctor phoned an on-call specialist to discuss a diagnosis of a patient. 
Id. at 707. The specialist diagnosed Lection's condition over the phone, told the emergency room
doctor that no other treatment was necessary, and assured the doctor that it was "all right" for her
to leave the hospital. Id. According to the court, those statements constituted an evaluation of the
information provided and a medical decision concerning the patient's need for treatment. Id. Thus,
the court concluded that the summary-judgment evidence presented conclusively established a
physician-patient relationship between the on-call specialist, who made affirmative acts of
treatment, and the patient. Id.

 But unlike Lection, Dr. Glusman was not on-call, he declined receiving detailed information
from which he could diagnose Ortiz, he made no diagnosis of Ortiz, nor did he order any treatment
plans or tell the nurses how to proceed with Ortiz's care. Nothing in the record reflects that, at the
time of Dr. Glusman's telephone conversation, he made any medical decisions or had any
responsibility to control the course of Ortiz's treatment. Rather, he refused the consult for May 10,
2003, and told the nurse that he would be available to see Ortiz the next day.

 In short, for a duty to exist, a physician-patient relationship must be created. St. John, 901
S.W.2d at 423. Based on the summary-judgment record, it is clear that Dr. Glusman took no
affirmative acts to treat Ortiz. Therefore, we find, as a matter of law, that no physician-patient
relationship existed between Ortiz and Dr. Glusman at the time the consult phone call was received. 
Accordingly, we hold that the trial court did not err by granting Dr. Glusman's motion for summary
judgment. Issue Two is overruled.

CONCLUSION

 Having overruled Ortiz's issues, we affirm the trial court's judgment.


 GUADALUPE RIVERA, Justice

February 16, 2011


Before Chew, C.J., McClure, and Rivera, JJ.

1. Ortiz claims that Dr. Glusman spoke to Nurse Jessica Segura, not Nurse Atchinson. However, nothing in
the record indicates that Dr. Glusman spoke to Nurse Segura. At most, a hypothetical posited during Nurse Segura's
deposition suggests that if Nurse Atchinson did not speak to Dr. Glusman, she did. However, Nurse Segura did not
remember attending to Ortiz, nor could she recall ever speaking to Dr. Glusman about a consult for Ortiz. And Dr.
Glusman testified that he spoke only to Nurse Atchinson.